■ Maureen McCoy, Appellant, v Brian Joseph McCoy, Respondent. [985 NYS2d 629]—

In an action for a divorce and ancillary relief, the plaintiff appeals, as limited by her brief, from stated portions of a judgment of the Supreme Court, Putnam County (Nicolai, J.), dated May 4, 2011, which, inter alia, upon a decision of the same court dated March 13, 2011, made after a nonjury trial, directed the defendant to pay child support in the sum of only $321.10

per week, failed to award her arrears for pendente lite child support, directed that the former marital residence be listed for immediate sale or that the plaintiff be permitted to "buy out" the defendant's interest, directed that the plaintiff is solely responsible for that part of the balance of a home equity line of credit that exceeded $34,000, and directed the equitable distribution of the parties' retirement accounts. By decision and order dated June 19, 2013, this Court remitted the matter to the Supreme Court, Putnam County, to set forth in a report the factors considered and the reasons for its determination as to child support, and the appeal was held in abeyance in the interim. The Supreme Court has filed its report.

Ordered that the judgment is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the provision thereof directing the defendant to pay child support in the sum of $321.10 per week, and substituting therefor a provision directing the defendant to pay child support in the sum of $462.98 per week retroactive to the commencement of the action, (2) by deleting the provision thereof directing the immediate sale of the former marital residence or permitting the plaintiff to "buy out" the defendant's interest, and substituting therefor provisions awarding exclusive occupancy of the former marital residence to the plaintiff until the parties' younger child attains the age of 18 years or is emancipated, and directing the plaintiff to pay carrying costs on the home, including the first mortgage payments, property taxes, utilities, and upkeep costs, until that time, (3) by deleting the provision thereof directing that the plaintiff is solely responsible for that part of the balance of a home equity line of credit that exceeded $34,000, and substituting therefor a provision directing that the parties are equally responsible for the entire home equity line of credit balance, and (4) by deleting the provision thereof directing the equitable distribution of the parties' retirement accounts; as so modified, the judgment is affirmed insofar as appealed from, with costs to the plaintiff, and the matter is remitted to the Supreme Court, Putnam County, for a determination of child support arrears retroactive to the commencement of the action, and for the entry of an amended judgment.

The parties were married in 2002, and they are the parents of two children. The plaintiff appeals from certain portions of the judgment of divorce regarding child support and equitable distribution.

The Child Support Standards Act (see Domestic Relations Law § 240 [1-b]) sets forth a formula for calculating child support by applying a designated statutory percentage, based upon

the number of children to be supported, to combined parental income up to the statutory cap that is in effect at the time of the judgment (*see Holterman v Holterman*, 3 NY3d 1, 11 [2004]; *Matter of Cassano v Cassano*, 85 NY2d 649, 653-654 [1995]). Here, the applicable statutory cap is $130,000 (*see* Social Services Law § 111-i [2] [b]). With respect to combined parental income exceeding that amount, the court has the discretion to apply the statutory child support percentage, or to apply the factors set forth in Domestic Relations Law § 240 (1-b) (f) (*see Matter of Cassano v Cassano*, 85 NY2d at 654; *Matter of Byrne v Byrne*, 46 AD3d 812, 814 [2007]), or to utilize "some combination of th[ose] two" methods (*Poli v Poli*, 286 AD2d 720, 723 [2001]; *see Jordan v Jordan*, 8 AD3d 444, 445 [2004]). Regardless of the method utilized, the hearing court must " 'articulate its reason or reasons for doing so, which should reflect a careful consideration of the stated basis for its exercise of discretion, the parties' circumstances, and its reasoning why there [should or] should not be a departure from the prescribed percentage' " (*Wagner v Dunetz*, 299 AD2d 347, 350-351 [2002], quoting *Matter of Schmitt v Berwitz*, 228 AD2d 604, 605 [1996]; *see Matter of Cassano v Cassano*, 85 NY2d at 655; *Matter of Wienands v Hedlund*, 305 AD2d 692, 693 [2003]).

Here, in calculating the defendant's child support obligation, the Supreme Court did not include parental income exceeding the statutory cap, but failed to set forth its reasons for that determination (*Matter of Cassano v Cassano*, 85 NY2d at 655; *Hartnett v Hartnett*, 281 AD2d 900, 901 [2001]; *Goldman v Goldman*, 248 AD2d 590, 591 [1998]). In its report on remittal, the Supreme Court stated that it had indeed intended to apply the designated statutory percentage to the *total* combined income of the parties. Through a "typographical error," however, its calculation was based only on the statutory cap, a significantly lower amount. Upon clarifying its intent in its report, the court also adequately explained its reason for its determination to apply the statutory percentage to the combined income of the parties. We modify the judgment to reflect the defendant's share of the intended award.

The Supreme Court did not err in failing to award the mother arrears for pendente lite child support. A party to a matrimonial action may make an application for a judgment directing payment of child support arrears at any time prior to or subsequent to the entry of a judgment of divorce (*see* Domestic Relations Law § 244). However, an application for a judgment directing the payment of child support arrears must be made "upon such notice to the spouse or other person as the court

may direct" (Domestic Relations Law § 244). Here, the plaintiff's application was not made in accordance with that requirement. Accordingly, the application was not proper (*see* Domestic Relations Law § 244; *Matter of Fixman v Fixman*, 31 AD3d 637, 637-638 [2006]; *see also Saad v Saad*, 71 AD3d 1116, 1116-1117 [2010]).

Domestic Relations Law § 236 (B) (5) (f) provides that the court may, in its discretion, make an order regarding the use and occupancy of the marital residence "without regard to the form of ownership of such property." Exclusive possession of the marital residence is generally granted to the custodial parent (*see Cabeche v Cabeche*, 10 AD3d 441 [2004]; *Goldblum v Goldblum*, 301 AD2d 567, 568 [2003]; *see also Gahagan v Gahagan*, 76 AD3d 538, 540 [2010]). In determining whether the custodial parent should be granted exclusive occupancy of the marital home, the trial court should consider, inter alia, the needs of the children, whether the noncustodial parent is in need of the proceeds from the sale of that home, whether comparable housing is available to the custodial parent in the same area at a lower cost, and whether the parties are financially capable of maintaining the residence (*see Graziano v Graziano*, 285 AD2d 488, 489 [2001]). As one factor, the "need of the custodial parent to occupy the marital residence [must be] weighed against the financial need of the parties" (*Goldblum v Goldblum*, 301 AD2d at 568; *see Skinner v Skinner*, 241 AD2d 544, 545-546 [1997]).

Here, in light of factors including the educational and other needs of the parties' two children and the parties' financial circumstances, the Supreme Court improvidently exercised its discretion in directing that the former marital residence be listed for immediate sale, or that the plaintiff could "buy out" the defendant's interest. Rather, the court should have awarded the plaintiff exclusive possession of the former marital residence until the parties' younger child attains the age of 18 or is otherwise emancipated (*see Goldblum v Goldblum*, 301 AD2d at 568; *Graziano v Graziano*, 285 AD2d at 489; *see also Gahagan v Gahagan*, 76 AD3d at 540; *Cabeche v Cabeche*, 10 AD3d at 441; *Waldmann v Waldmann*, 231 AD2d 710, 711 [1996]). During the period of exclusive occupancy of the residence, the plaintiff must pay the carrying charges for the home, including the first mortgage payments, property taxes, utilities, and upkeep costs (*see Goldblum v Goldblum*, 301 AD2d at 569).

The Supreme Court also improvidently exercised its discretion in directing that the plaintiff was to be solely responsible for the balance of a home equity line of credit (hereinafter

HELOC) that exceeded $34,000. In general, "expenses incurred prior to the commencement of a divorce action constitute marital debt and should be equally shared by the parties" (*Bogdan v Bogdan*, 260 AD2d 521, 522 [1999]; *see Mosso v Mosso*, 84 AD3d 757, 760 [2011]; *Rodriguez v Rodriguez*, 70 AD3d 799, 802 [2010]). Under the circumstances of this case, the defendant failed to show that the entire HELOC debt should not be considered marital property (*see Caracciolo v Chodkowski*, 90 AD3d 801, 803 [2011]; *Mosso v Mosso*, 84 AD3d at 760).

As both parties correctly state, the Supreme Court erred in directing equitable distribution of the parties' retirement accounts, in light of the parties' agreement that they would each retain those retirement accounts (*see generally* Domestic Relations Law § 236 [B] [3]). Rivera, J.P., Balkin, Leventhal and Hinds-Radix, JJ., concur.