■ Ira Hymowitz, Respondent, v Ellen Hymowitz, Appellant. [991 NYS2d 57]—

In an action for a divorce and ancillary relief, the defendant appeals, as limited by her brief, from stated portions of an amended judgment of the Supreme Court, Nassau County (Diamond, J.), entered March 21, 2012, which, upon a decision of the same court dated September 1, 2011, as amended January 9, 2012, made after a nonjury trial, and an order of the same court dated October 24, 2011, inter alia, (1) awarded her child support in the sum of only $147.12 per week, (2) awarded her maintenance for only seven years, (3) failed to direct the plaintiff to obtain and maintain a life insurance policy to secure child support and maintenance payments, (4) determined that the plaintiff's interest in Weinstein & Holtzman, Inc., was his separate property and awarded the defendant the sum of only $69,900, representing 15% of the increase in the value of the

plaintiff's interest in that business, (5) determined that the plaintiff's one-third interest in BSH Park Row, LLC, was his separate property and awarded the defendant the sum of only $184,950, representing her 15% share of the value of that business, (6) failed to equitably distribute a share of the plaintiff's interest in HGH Family, LLC, by awarding the defendant only 50% of the net profit distributions that the plaintiff receives from HGH Family, LLC, until the defendant's 66th birthday, (7) valued the parties' financial and retirement accounts "as of the date of the signing of the Judgment of Divorce," (8) awarded the plaintiff a credit against the proceeds of the sale of the marital residence for 100% of the payments he made to reduce the principal balance of the mortgage on the marital residence, and (9) awarded her an attorney's fee in the sum of only $115,000 and an expert fee in the sum of only $20,500.

Ordered that the amended judgment is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the provision thereof awarding the defendant the sum of $69,900, representing 15% of the increase in value of the plaintiff's interest in Weinstein & Holtzman, Inc., and substituting therefor a provision awarding the defendant the sum of $116,500, representing 25% of the increase in value of the plaintiff's interest in that business, (2) by deleting the provision thereof awarding the defendant the sum of $184,950 as her separate property interest in BSH Park Row, LLC, representing 15% of the value of the plaintiff's interest in that business, and substituting therefor a provision determining that the plaintiff's one-third interest in BSH Park Row, LLC, is marital property subject to equitable distribution, and awarding the defendant the sum of $308,250, representing 25% of the value of the plaintiff's interest in that business, (3) by deleting the provision thereof awarding the defendant 50% of the net profit distributions that the plaintiff receives from HGH Family, LLC, until her 66th birthday, and substituting therefor a provision directing that the plaintiff's interest in HGH Family, LLC, is marital property subject to equitable distribution, and awarding the defendant distributions from her equitable share of the plaintiff's interest in HGH Family, LLC, retroactive to the date of the commencement of the action, in an amount to be calculated by the Supreme Court, representing 40% of the value of the plaintiff's interest in that business, (4) by deleting the provision thereof awarding the plaintiff a credit against the proceeds of the sale of the marital residence for 100% of the payments he made to reduce the principal balance of the mortgage on the marital residence during the divorce proceedings, and substituting therefor a provision awarding the plaintiff a credit for 50% of the payments he

made to reduce the principal balance of the mortgage on the marital residence during the divorce proceedings, (5) by adding a provision thereto awarding the defendant a credit against the proceeds of the sale of the marital residence for the amount the plaintiff withdrew from the parties' home equity line of credit account to pay his attorney's and expert fees, (6) by adding a provision thereto distributing to each party 50% of the shares of each of the stocks acquired during the marriage, (7) by adding a provision thereto awarding the defendant a credit in the sum of $1,911.97, representing 50% of the marital portion of the parties' tax refund for tax year 2008, (8) by deleting the provision thereof valuing the parties' financial and retirement accounts "as of the date of the signing of the Judgment of Divorce," and substituting therefor a provision valuing the parties' financial and retirement accounts as of January 1, 2011, (9) by deleting the provision thereof awarding child support based only upon the first $130,000 of combined parental income, and substituting therefor a provision awarding child support based upon the first $175,000 of combined parental income, (10) by deleting the provision thereof awarding the defendant maintenance in the sum of $6,250 per month, commencing with the 49th month after the signing of the amended judgment and continuing for 36 months thereafter, and substituting therefor a provision awarding her maintenance in the sum of $6,250 per month, commencing with the 49th month from the signing of the amended judgment and continuing until the earliest date of her remarriage, her attainment of age 66, or the death of either party, and (11) by adding a provision thereto directing the plaintiff to maintain a life insurance policy for the benefit of the defendant until payment of the distributive award and maintenance is completed; as so modified, the amended judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings in accordance herewith, and for the entry of an appropriate second amended judgment thereafter.

The plaintiff and the defendant were married on April 10, 1988, and have two children, who are now both over the age of 21. Following 20 years of marriage, the plaintiff commenced this action for a divorce and ancillary relief, and the matter proceeded to trial on the issues of equitable distribution of the marital property, maintenance, child support, attorney's fees, and expert fees.

Contrary to the defendant's contention, the record supports the Supreme Court's conclusion that the transfer of a one-third interest in Weinstein & Holtzman, Inc. (hereinafter Weinstein

& Holtzman), a family-owned hardware store, to the plaintiff from his father and uncle which occurred during the marriage was tantamount to a "gift from a party other than the spouse" and, thus, was the separate property of the plaintiff not subject to equitable distribution (Domestic Relations Law § 236 [B] [1] [d] [1]). The determination as to whether the transfer was a gift to the plaintiff depended upon the credibility of the witnesses at trial, and the credibility determinations made by the Supreme Court are supported by the record (*see Scher v Scher*, 91 AD3d 842, 846 [2012]; *Aloi v Simoni*, 82 AD3d 683, 685 [2011]; *Schwartz v Schwartz*, 67 AD3d 989, 990 [2009]; *Ivani v Ivani*, 303 AD2d 639, 640 [2003]). However, we find that the Supreme Court should have awarded the defendant a 25% share of the appreciation in the value of the plaintiff's interest in Weinstein & Holtzman (*see* Domestic Relations Law § 236 [B] [5] [d] [6]; *Price v Price*, 69 NY2d 8, 18 [1986]; *Formica v Formica*, 101 AD3d 805, 806 [2012]; *Embury v Embury*, 49 AD3d 802, 804 [2008]; *Imhof v Imhof*, 259 AD2d 666, 667 [1999]). Taking into consideration the circumstances of this case and of the respective parties, we find that an award to the defendant of a 25% share of the appreciation in value of the plaintiff's interest in Weinstein & Holtzman will take into account the defendant's limited involvement in the plaintiff's business, while not ignoring the direct and indirect contributions she made as the primary caretaker of the parties' children, as a homemaker, and as a social companion to the plaintiff, while foregoing her career (*see* Domestic Relations Law § 236 [B] [5] [d] [6]; *Price v Price*, 69 NY2d at 11, 14; *Ciampa v Ciampa*, 47 AD3d 745, 747 [2008]; *Griggs v Griggs*, 44 AD3d 710 [2007]). Contrary to the defendant's contention, the Supreme Court did not improvidently exercise its discretion in valuing the appreciation of the plaintiff's interest in Weinstein & Holtzman (*see Burns v Burns*, 84 NY2d 369, 375 [1994]; *Litman v Litman*, 61 NY2d 918, 920 [1984]; *Wasserman v Wasserman*, 66 AD3d 880, 882 [2009]).

The Supreme Court improperly classified the plaintiff's one-third interest in BSH Park Row, LLC (hereinafter BSH), a holding company whose sole asset is a building located at 29 Park Row in lower Manhattan in which the hardware store is situated, as his separate property not subject to equitable distribution. "Property acquired during the marriage is presumed to be marital property and the party seeking to overcome such presumption has the burden of proving that the property in dispute is separate property" (*Judson v Judson*, 255 AD2d 656, 657 [1998]; *see Steinberg v Steinberg*, 59 AD3d 702, 704 [2009]; *D'Angelo v D'Angelo*, 14 AD3d 476, 477 [2005]; *Farag v Farag*, 4 AD3d 502, 503 [2004]). Here, BSH was formed and the build-

ing was acquired during the marriage, and the plaintiff failed to meet his burden of tracing the use of claimed separate funds to establish that they were used for the purchase of his portion of the property's acquisition costs (*see Steinberg v Steinberg*, 59 AD3d at 704; *D'Angelo v D'Angelo*, 14 AD3d at 477; *Capasso v Capasso*, 119 AD2d 268, 272 [1986]). Marital property is to be viewed broadly, while separate property is to be viewed narrowly (*see Price v Price*, 69 NY2d at 15; *Saasto v Saasto*, 211 AD2d 708, 709 [1995]). Where, as here, a party fails to trace sources of money claimed to be separate property, a court may treat it as marital property (*see Saasto v Saasto*, 211 AD2d at 709; *Sarafian v Sarafian*, 140 AD2d 801, 804 [1988]; *cf. Lischynsky v Lischynsky*, 120 AD2d 824 [1986]). Here, the Supreme Court should have awarded the defendant a 25% share of the plaintiff's interest in BSH (*see* Domestic Relations Law § 236 [B] [5] [d] [6]; *Price v Price*, 69 NY2d at 18; *Formica v Formica*, 101 AD3d at 806; *Embury v Embury*, 49 AD3d at 804; *Imhof v Imhof*, 259 AD2d at 667). However, contrary to the defendant's contention, the record supports the Supreme Court's determination as to the value of the plaintiff's interest in BSH (*see Burns v Burns*, 84 NY2d at 375; *Litman v Litman*, 61 NY2d at 920; *Wasserman v Wasserman*, 66 AD3d at 882).

The Supreme Court erred when it failed to equitably distribute a share of the plaintiff's interest in HGH Family, LLC (hereinafter HGH). On April 5, 2011, after the commencement of trial, the parties entered into an oral stipulation of settlement in open court concerning the issue of the equitable distribution of the parties' 12.9% interest in HGH, which operates an MRI facility in Westchester County. Although the 12.9% interest was held in the plaintiff's name, the parties stipulated that the entire interest was marital property, subject to the trial court's determination after trial of the defendant's equitable share. However, instead of awarding the defendant an equitable share of this marital property in accordance with the terms of the parties' open court stipulation, the Supreme Court merely awarded the defendant 50% of the plaintiff's share of the annual distributions from HGH until her 66th birthday.

It is well settled that stipulations of settlement, especially those whose terms are placed upon the record in open court, are judicially favored. Absent a showing of fraud, overreaching, mistake, or duress, the stipulation should not be disturbed by the court (*see Matter of Woods v Velez-Shanahan*, 308 AD2d 593, 594 [2003]; *Lafferty v Lafferty*, 256 AD2d 445, 446 [1998]; *Wieners v Wieners*, 239 AD2d 493, 494 [1997]; *Ruxton v Ruxton*, 181 AD2d 876 [1992]). No such showing has been made here.

Thus, the Supreme Court should have incorporated the parties' stipulation into the amended judgment (*see Matter of Woods v Velez-Shanahan*, 308 AD2d at 594; *Lafferty v Lafferty*, 256 AD2d at 446; *Wieners v Wieners*, 239 AD2d at 494; *Ruxton v Ruxton*, 181 AD2d 876 [1992]). Further, based on the record and the relative contributions made by the parties throughout the marriage, the defendant should receive a 40% share of the marital interest in HGH. In addition, the defendant should be awarded distributions from her equitable share of the plaintiff's interest in HGH, retroactive to the date of commencement of the action (*see Mesholam v Mesholam*, 11 NY3d 24, 28 [2008]; *Anglin v Anglin*, 80 NY2d 553, 556 [1992]). Accordingly, we remit the matter to the Supreme Court, Nassau County, to recalculate the defendant's equitable share of the plaintiff's interest in HGH in conformity with the terms of the parties' April 5, 2011, stipulation, and this decision and order.

The Supreme Court erred in failing to distribute to each of the parties 50% of the shares of each of the stocks acquired during the marriage. The plaintiff admitted that these stocks were acquired by him during the marriage, and were subject to equitable distribution (*see Dellafiora v Dellafiora*, 38 AD3d 825, 826-827 [2007]).

The Supreme Court should have valued the parties' financial and retirement accounts as of January 1, 2011, which is the date set forth in the parties' August 2011 "so-ordered" stipulation and is the date closest to the date of trial (*see* Domestic Relations Law § 236 [B] [4] [b]; *Price v Price*, 113 AD2d 299, 307-308 [1985], *affd* 69 NY2d 8 [1986]; *Harrington v Harrington*, 300 AD2d 861, 864 [2002]; *Soule v Soule*, 252 AD2d 768, 771 [1998]; *Heine v Heine*, 176 AD2d 77, 87 [1992]; *Wegman v Wegman*, 123 AD2d 220, 234 [1986]).

The Supreme Court improvidently exercised its discretion in awarding the plaintiff a credit against the proceeds of the sale of the marital residence for 100% of the payments he made to reduce the principal balance of the mortgage during the divorce proceedings (*see Le v Le*, 82 AD3d 845, 845-846 [2011]; *Mesholam v Mesholam*, 25 AD3d 670, 671-672 [2006], *mod* 11 NY3d 24 [2008]; *Litman v Litman*, 280 AD2d 520, 522 [2001]; *Palumbo v Palumbo*, 10 AD3d 680, 682 [2004]). The plaintiff was entitled to a credit of only 50% of the reduction in mortgage principal because "[g]enerally, it is the responsibility of both parties to maintain the marital residence . . . during the pendency of a matrimonial action" (*Judge v Judge*, 48 AD3d 424, 425-426 [2008] [internal quotation marks omitted]; *see Le v Le*, 82 AD3d at 845-846; *Palumbo v Palumbo*, 10 AD3d at 682). Accordingly,

we remit the matter for a determination of the amount the plaintiff expended in order to reduce the principal balance of the mortgage on the marital residence during the divorce proceedings.

The Supreme Court should have awarded the defendant a credit against the proceeds of the sale of the marital residence for the amount of money the plaintiff withdrew from the parties' home equity line of credit account (hereinafter HELOC) to pay his attorney's fees and expert's fees. This effectively made the defendant, the nonmonied spouse, pay a substantial portion of the counsel fees of the monied spouse, the plaintiff, in violation of Domestic Relations Law § 237 and, therefore, was improper (*see generally O'Shea v O'Shea*, 93 NY2d 187 [1999]; *Hathaway v Hathaway*, 16 AD3d 458 [2005]; *Charpié v Charpié*, 271 AD2d 169 [2000]; *Matwijczuk v Matwijczuk*, 261 AD2d 784 [1999]; *Steinmetz v Steinmetz*, 98 AD2d 657 [1983]). Upon remittal, the Supreme Court should award the defendant a credit against the proceeds of the sale of the marital residence for the amount of money the plaintiff withdrew from the HELOC to pay his attorney's fees and expert's fees.

The parties received a tax refund for tax year 2008 in the amount of $4,652, which was placed in escrow. Since the matrimonial action was commenced on October 27, 2008, 82.2% of the refund is marital property (*see Lueker v Lueker*, 72 AD3d 655, 657 [2010]). The distribution should be 50% to each party. Therefore, the defendant was entitled to a credit in the sum of $1,911.97.

The Supreme Court improvidently exercised its discretion in fixing the duration of maintenance awarded to the defendant (*see* Domestic Relations Law § 236 [B] [6] [a]; *Hartog v Hartog*, 85 NY2d 36, 50-52 [1995]; *Marley v Marley*, 106 AD3d 961, 962 [2013]). In light of the parties' ages and their lifestyle during the marriage, as well as their financial circumstances, the Supreme Court should have awarded the defendant maintenance until the earliest of her eligibility for full Social Security benefits at the age of 66, her remarriage, or the death of either party (*see Giokas v Giokas*, 73 AD3d 688, 689 [2010]; *Hamroff v Hamroff*, 35 AD3d 365, 366 [2006]; *Penna v Penna*, 29 AD3d 970, 972 [2006]).

Further, the Supreme Court failed to properly calculate child support pursuant to the Child Support Standards Act (*see* Domestic Relations Law § 240 [1-b] [hereinafter the CSSA]) for the period of time before each child reached the age of 21. The CSSA sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the

number of children to be supported, to combined parental income up to the statutory cap that is in effect at the time of the judgment (*see Holterman v Holterman*, 3 NY3d 1, 11 [2004]; *Matter of Cassano v Cassano*, 85 NY2d 649, 653-654 [1995]), here, $130,000 (*see* Social Services Law § 111-i [2] [b]). With respect to combined parental income exceeding that amount, the court has the discretion to apply the statutory child support percentage, or to apply the factors set forth in Domestic Relations Law § 240 (1-b) (f) (*see Matter of Cassano v Cassano*, 85 NY2d at 654; *McCoy v McCoy*, 107 AD3d 857, 858 [2013]; *Matter of Byrne v Byrne*, 46 AD3d 812, 814 [2007]), or to utilize "some combination of th[ose] two" methods (*Poli v Poli*, 286 AD2d 720, 723 [2001]; *see Jordan v Jordan*, 8 AD3d 444, 445 [2004]). The court must " 'articulate its reason or reasons for [that determination], which should reflect a careful consideration of the stated basis for its exercise of discretion, the parties' circumstances, and its reasoning why there [should or] should not be a departure from the prescribed percentage' " (*Wagner v Dunetz*, 299 AD2d 347, 350-351 [2002], quoting *Matter of Schmitt v Berwitz*, 228 AD2d 604, 605 [1996]; *see Matter of Cassano v Cassano*, 85 NY2d at 655; *Matter of Wienands v Hedlund*, 305 AD2d 692, 693 [2003]).

There was no basis under the circumstances of this case to limit the child support award to the statutory cap of the first $130,000 of combined parental income. In view of the standard of living enjoyed by the parties' children during the marriage, and the earnings and assets of the parties, the child support award should be based upon $175,000 of combined parental income (*see Holterman v Holterman*, 3 NY3d at 10; *Heymann v Heymann*, 102 AD3d 832, 834 [2013]; *Lago v Adrion*, 93 AD3d 697, 699 [2012]). The Supreme Court also erred in failing to direct that the plaintiff contribute his pro rata share of the younger child's unreimbursed reasonable health care expenses (*see* Domestic Relations Law § 240 [1-b] [c] [5]; *Griggs v Griggs*, 44 AD3d 710, 713-714 [2007]; *Granade-Bastuck v Bastuck*, 249 AD2d 444, 446 [1998]; *Wilson v Wilson*, 203 AD2d 558 [1994]). Furthermore, the Supreme Court erred in refusing to award the defendant retroactive child support for the periods of time when the older child resided with her prior to the older child's emancipation and when the younger child resided with her. By statute, child support should be awarded retroactive to the date an application for such support was made, which, in this case, was the date upon which the defendant served her motion for pendente lite child support (*see* Domestic Relations Law § 236 [B] [7] [a]; *Wallach v Wallach*, 37 AD3d 707, 709 [2007]; *Poli v Poli*, 286 AD2d at 723; *Gezelter v Shoshani*, 283 AD2d 455, 456

[2001]; *Solomon v Solomon*, 282 AD2d 666, 667 [2001]; *Crane v Crane*, 264 AD2d 749, 752 [1999]). We note that in calculating the plaintiff's retroactive support obligation, the court should determine the amount of payments made by him on behalf of the defendant and children under the pendente lite order, which required him to pay the carrying charges for the marital residence. To the extent that these payments can appropriately be allocated to temporary child support rather than temporary maintenance, the plaintiff should be permitted to offset such payments against accrued arrears (*see Crane v Crane*, 264 AD2d at 752; *Mellen v Mellen*, 260 AD2d 609, 610 [1999]; *Grossman v Merke-Grossman*, 248 AD2d 670, 670-671 [1998]).

We agree with the defendant's contention that the Supreme Court should have directed the plaintiff to maintain life insurance in her favor to secure his obligation to pay the maintenance and distributive award (*see* Domestic Relations Law § 236 [B] [8] [a]; *Hartog v Hartog*, 85 NY2d 36 [1995]; *Miceli v Miceli*, 78 AD3d 1023, 1026 [2010]).

Given the equities and circumstances of the case, the Supreme Court did not improvidently exercise its discretion in rendering its award of attorney's fees and expert fees (*see DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881 [1987]; *Ciampa v Ciampa*, 47 AD3d at 748; *Prichep v Prichep*, 52 AD3d 61, 64 [2008]; *Timpone v Timpone*, 28 AD3d 646 [2006]; *Morrissey v Morrissey*, 259 AD2d 472, 473 [1999]; *Walker v Walker*, 255 AD2d 375, 376 [1998]).

The defendant's remaining contentions are without merit. Skelos, J.P., Lott, Roman and Cohen, JJ., concur.