■ CHRISTINA L. GOLDMAN, Respondent, v STEVEN L. GOLDMAN, Appellant. [17 NYS3d 166]—

Appeals from (1) an order of the Supreme Court, Suffolk County (William J. Kent, J.), dated April 27, 2009, and (2) a judgment of that court entered March 1, 2013. The order, inter alia, awarded certain pendente lite relief. The judgment, insofar as appealed from, failed to award the defendant a separate property credit with regard to the marital residence, equitably distributed the proceeds from the sale of property situated at 24 North Road in Northport and the funds held in a TD Ameritrade account on a 50/50 basis, and failed to award the parties credits for the amounts they each expended after the commencement of the action on carrying charges related to the marital residence.

Ordered that the appeal from the order is dismissed, without costs or disbursements; and it is further,

Ordered that the judgment is modified, on the facts and in the exercise of discretion, by adding thereto a provision awarding each party a credit against the proceeds of the sale of the marital residence for 50% of the amounts they each expended after the commencement of the action on carrying charges related to the marital residence; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Suffolk County, for a determination of the amounts that each party expended after the commencement of the action on carrying charges related to the marital residence, and for the entry of an appropriate amended judgment thereafter.

The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

The Supreme Court properly denied the defendant's application for a separate property credit with regard to the marital residence. Contrary to the defendant's contention, he failed to establish that the funds used to pay for the construction of the marital residence came from his separate property (*see Golden v Golden*, 98 AD3d 647, 649 [2012]; *Scher v Scher*, 91 AD3d

842, 846 [2012]; *Massimi v Massimi*, 35 AD3d 400, 402 [2006]; *Lynch v King*, 284 AD2d 309 [2001]).

Contrary to the defendant's contention, the Supreme Court properly determined that the funds held in a TD Ameritrade account should be distributed equally. Generally, compensation for personal injury is separate property (*see* Domestic Relations Law § 236 [B] [1] [d] [2]). However, separate property that is commingled with marital property loses its separate character (*see Golden v Golden*, 98 AD3d at 649-650; *Geisel v Geisel*, 241 AD2d 442, 443 [1997]). Here, while the account at its inception held the defendant's separate property in the form of a check for disability benefits in the amount of $400,000, over the years, that property was commingled with marital assets in the account and, therefore, lost its separate character.

"[G]enerally, it is the responsibility of both parties to maintain the marital residence . . . during the pendency of a matrimonial action" (*Hymowitz v Hymowitz*, 119 AD3d 736, 741 [2014] [internal quotation marks omitted]). "Where . . . a party has paid the other party's share of what proves to be marital debt, such as the mortgage, taxes, and insurance on the marital residence, reimbursement is required" (*Le v Le*, 82 AD3d 845, 846 [2011]; *see Judge v Judge*, 48 AD3d 424, 425-426 [2008]). Here, while both parties paid certain carrying charges related to the marital residence after the commencement of the action, the defendant paid the vast majority of these expenses. Since these expenses should have been allocated on a 50/50 basis, we modify the judgment by adding a provision thereto awarding each party a credit against the proceeds of the sale of the marital residence for 50% of the amounts that they each expended after the commencement of this action on such carrying charges, and remit the matter to the Supreme Court, Suffolk County, for a determination of the amounts that each party expended after the commencement of this action on such carrying charges, and for the entry of an appropriate amended judgment thereafter (*see Hymowitz v Hymowitz*, 119 AD3d at 742; *Le v Le*, 82 AD3d at 845-846; *Judge v Judge*, 48 AD3d at 425-426).

The defendant's remaining contentions are without merit. Dillon, J.P., Dickerson, Hall and LaSalle, JJ., concur.

■ GREENS AT HALF HOLLOW HOME OWNERS ASSOCIATION, INC., for Itself and on Behalf of the Residents of THE GREENS AT HALF HOLLOW, et al., Respondents-Appellants, v GREENS GOLF CLUB, LLC, et al., Appellants-Respondents. [17 NYS3d 158]—

In an action, inter alia, pursuant to Town Law § 268 (2) to enforce a zoning ordinance, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Suffolk County (Pines, J.), dated June 5, 2013, as denied those branches of the motion of the defendant Greens Golf Club, LLC, which were for summary judgment dismissing the first cause of action insofar as asserted by the individual plaintiffs, and the fifth and sixth causes of action, and granted that branch of the plaintiffs' cross motion which was for summary judgment on the first cause of action insofar as asserted by the individual plaintiffs to the extent of enjoining Greens Golf Club, LLC, from allowing the community portion of the subject building and its associated outdoor recreational facilities to be used by anyone other than the residents of the subject residential planned use development and their guests, and the plaintiffs cross-appeal, as limited by their brief, from so much of the same order as granted those branches of the defendants' separate motions which were for summary judgment dismissing the seventh cause of action, for summary judgment on the eighth cause of action, in effect, declaring that the defendants and their respective successors in title are not subject to future assessments by the Greens at Half Hollow Home Owners Association, Inc., for their fair share of annual common expenses incurred by the Greens at Half Hollow Home Owners Association, Inc., or its members, and for summary judgment on a portion of the ninth cause of action, in effect, declaring that the covenant to pay social membership fees to Greens Golf Club, LLC, runs with the land of the residential unit owners of The Greens at Half Hollow so as to bind subsequent purchasers, and denied those branches of their cross motion which were for summary judgment on the issue of liability on the seventh and eighth causes of action, and so much of the ninth cause of action as sought a judgment declaring that a covenant to pay social membership fees to Greens Golf Club, LLC, does not run with the land of the residential unit owners of The Greens at Half Hollow so as to bind subsequent purchasers.

Ordered that the appeal by the defendant Greens at Half Hollow, LLC, from so much of the order as denied those branches of the motion of the defendant Greens Golf Club, LLC, which were for summary judgment dismissing the first cause of action insofar as asserted by the individual plaintiffs, and the fifth and sixth causes of action, and granted so much of that branch of the plaintiffs' cross motion which was for summary judgment on the first cause of action insofar as asserted by the individual plaintiffs to the extent of enjoining Greens Golf Club, LLC, from allowing the community portion

of the subject building and its associated outdoor recreational facilities to be used by anyone other than the residents of the subject residential planned use development and their guests is dismissed, as it is not aggrieved by those portions of the order (*see* CPLR 5511; *Mixon v TBV, Inc.*, 76 AD3d 144, 156-157 [2010]); and it is further,

Ordered that the order is modified, on the law, by deleting the provision thereof denying those branches of the motion of Greens Golf Club, LLC, which were for summary judgment dismissing the first cause of action insofar as asserted by the individual plaintiffs to the extent that the individual plaintiffs sought to transfer title of the community portion of the subject building from Greens Golf Club, LLC, to the plaintiff Greens at Half Hollow Home Owners Association, Inc., and the fifth and sixth causes of action, and substituting therefor a provision granting those branches of the motion; as so modified, the order is affirmed insofar as appealed from by the defendant Greens Golf Club, LLC, and insofar as cross-appealed from by the plaintiffs, without costs or disbursements, and the matter is remitted to the Supreme Court, Suffolk County, for the entry of a judgment, inter alia, declaring that the defendants and their respective successors in title are not subject to future assessments by the Greens at Half Hollow Home Owners Association, Inc., for their fair share of annual common expenses incurred by the Greens at Half Hollow Home Owners Association, Inc., or its members, and that the covenant to pay social membership fees to Greens Golf Club, LLC, runs with the land of the residential unit owners of The Greens at Half Hollow so as to bind subsequent purchasers.

In 1999, SBJ Associates, LLC (hereinafter SBJ), purchased a 382-acre parcel of property in the Town of Huntington and submitted to the Town Board of the Town of Huntington (hereinafter the Town Board) a "proposed master plan" for a residential planned use development (hereinafter R-PUD). The proposed master plan included regulations to create an R-PUD zoning district which would rezone the 382-acre parcel from R-80, which permitted single-family residences on two-acre lots, to permit 1,375 homes primarily for senior citizens and a privately owned golf course. The proposed master plan also called for the construction of an approximately 20,000 square foot building containing a community center, swimming pool, and tennis court complex (hereinafter the community building). On September 12, 2000, the Town Board adopted the proposed master plan, issued findings pursuant to the State Environmental Quality Review Act, and added section 198-21.2

to the Town Code of the Town of Huntington (hereinafter the zoning ordinance).

The zoning ordinance, inter alia, created a senior residential community (hereinafter SRC) subdistrict called The Greens at Half Hollow. Use regulations in the zoning ordinance for the SRC subdistrict provide that, "[i]n the SRC [s]ubdistrict, a building or premises shall be used for the following purposes only: (a) Dwellings . . . (b) Community building not to exceed . . . (25,000) square feet . . . [which] shall be for the exclusive use of residents of the entire R-PUD and their guests[, and] (c) Golf courses, including . . . [a] clubhouse." The use regulations further provided that "[t]he golf course shall be private. Membership shall be limited to residents of the entire R-PUD."

SBJ submitted to the Town of Huntington Department of Planning and Environment (hereinafter the Department of Planning) a site plan for the development of The Greens at Half Hollow, which combined the community building and golf course clubhouse into one building measuring more than 33,000 square feet (hereinafter the combined building). In May 2002, SBJ sold The Greens at Half Hollow to its affiliate, the defendant Greens at Half Hollow, LLC (hereinafter GHH). On September 25, 2002, after revised site plans were created which distinguished between the community building and golf course clubhouse portions of the combined building, the Planning Board conditionally approved the site plan. A floor area plan dated June 6, 2003, showed 23,574 square feet of community building space, including the entire upper level of the combined building.

In the meantime, between 2001 and 2002, SBJ, and then GHH, issued offering plans for the first four phases of The Greens at Half Hollow—Greens at Half Hollow Condominium I, II, III, and IV. The fifth and final phase of the offering plan—Greens at Half Hollow Condominium V—was issued in 2008. The offering plans provided that the golf course clubhouse, tennis courts, and swimming pool would be part of the "adjacent privately owned [g]olf [c]lub" and not form part of the common areas of The Greens at Half Hollow. The offering plans further provided that all home owners in The Greens at Half Hollow would automatically be social members of the golf club and required to pay social membership fees in exchange for complete rights and privileges to fully utilize all of the golf course clubhouse facilities, except without the privilege of playing golf. A Declaration of Covenants, Restrictions, Easements, Charges and Liens (hereinafter the C&R Declaration), included as a schedule to the offering plans, contained a covenant

obligating each homeowner to be a social member of the golf club and pay the then-current monthly social membership fees directly to the owner of the golf club, with unpaid fees to constitute a lien against the member's home. The individual plaintiffs' purchase agreements incorporated the offering plan and C&R Declaration, to which they agreed to be bound. The individual plaintiffs' deeds provided that the provisions of the C&R Declaration "shall bind any person having at any time any interest or estate in the Home, as though such provisions were recited at length herein."

On March 8, 2004, GHH conveyed approximately 84 acres of The Greens at Half Hollow to the defendant Greens Golf Club, LLC (hereinafter GGC), including the combined building and its related outdoor recreational facilities.

In 2011, the Greens at Half Hollow Home Owners Association, Inc. (hereinafter the HOA), for itself and on behalf of its members, the Boards of Managers of each of the five condominiums of The Greens at Half Hollow, and four individual unit owners, commenced this action against GGC and GHH. In the complaint, the plaintiffs stated that they sought redress against GGC and GGH "for what is, essentially, the theft of the community center building, outdoor swimming pool and tennis courts that were to be owned and operated by the [HOA, which] occurred as a result of the illegal incorporation of the realty into the private golf course." The plaintiffs further alleged that "the defendants have used and occupied the community center building entirely for their own benefit, renting the facilities to non-residents, and making absolutely no contribution to the costs incurred by the [HOA] for security, insurance, landscaping, street maintenance, lighting and snow plowing from which they and their private guests and private golf club members benefit."

The first cause of action, which is asserted pursuant to Town Law § 268 (2) against GGC only, seeks to enforce the R-PUD zoning ordinance. This cause of action alleges that the defendants failed to comply with the requirement that the community building portion of the combined building and its associated outdoor recreational facilities be for the exclusive use of residents of the R-PUD and their guests, instead regularly allowing it to be hired out for use by nonresidents for private parties, affairs, and events. Further, the first cause of action alleges that the defendants violated Town Code § 198-21.2 (F) (1) by failing to transfer ownership of the combined building, or at least the community building portion thereof, and the associated outdoor recreational facilities, to the HOA. The

plaintiffs sought to direct the GGC to convey the subject facilities to the HOA, subject to certain irrevocable licenses in GGC, or, in the alternative, to prohibit GGC from using such portions of the facilities for private parties and events by nonresidents.

The complaint asserted 13 other causes of action seeking various relief. As relevant to this appeal and cross appeal, the fifth cause of action, which was asserted against GGC only, sought restitution of the social membership fees paid for use of the community building portions of the combined building. The plaintiffs alleged that they are being excluded from and deprived of the use of the community building portions of the combined building as a result of GGC's use of that portion of the combined building for private parties, affairs, and events. The sixth cause of action, which was asserted against GGC only, sought an accounting and disgorgement of profits received from such use, together with reasonable use and occupancy for office space from which the HOA was allegedly excluded. The seventh cause of action sought damages from the defendants for unpaid contributions to common expenses. The eighth cause of action sought a judgment declaring that the defendants and their successors are subject to future assessments by the HOA for their fair share of annual common expenses. In the ninth cause of action, which was asserted against GGC only, the plaintiffs sought, inter alia, a judgment declaring that ownership of residential units within the development does not require liability for social membership fees because the covenant to pay such fees did not run with the land.

The defendants separately moved for summary judgment dismissing the complaint insofar as asserted against each of them. The plaintiffs cross-moved, inter alia, for summary judgment on the issue of liability on the first, seventh, eighth, and ninth causes of action. As relevant to this appeal and cross appeal, the Supreme Court granted that branch of GGC's motion which was for summary judgment dismissing the first cause of action only to the extent of dismissing so much of that cause of action as was asserted by the HOA, and denied those branches of GGC's motion which were for summary judgment dismissing the fifth and sixth causes of action. The court granted those branches of the defendants' separate motions which were for summary judgment dismissing the seventh and eighth causes of action insofar as asserted against each of them, and granted that branch of GGC's motion which was for summary judgment dismissing so much of the ninth cause of action as sought a judgment declaring that a covenant to pay social membership fees to GGC does not run with the land so as to bind

subsequent purchasers. The court granted that branch of the plaintiffs' cross motion which was for summary judgment on the first cause of action insofar as asserted by the individual plaintiffs to the extent of enjoining GGC from allowing the community building portion of the combined building and its associated outdoor recreational facilities, including swimming pool and tennis courts, to be used by anyone other than the residents of the R-PUD and their guests, and otherwise denied the cross motion.

With respect to the first cause of action, Town Law § 268 (2) provides a mechanism by which a Town or, as here, at least three taxpayers who meet certain requirements, may enforce a zoning ordinance. It provides that "[i]n case any building or structure is erected, constructed, reconstructed, altered, converted or maintained, or any building, structure or land is used, or any land is divided into lots, blocks, or sites in violation of this article or of any local law, ordinance or other regulation made under authority conferred thereby, the proper local authorities of the town, in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance, use or division of land, to restrain, correct or abate such violation, to prevent the occupancy of said building, structure, or land or to prevent any illegal act, conduct, business or use in or about such premises." (*Id.*)

The Supreme Court should have granted that branch of GGC's motion which was for summary judgment dismissing so much of the first cause of action insofar as asserted by the individual plaintiffs as sought to direct the transfer of ownership of the community building portion of the combined building to the HOA. We agree with the defendants that nothing in Town Law § 268 (2) permits a proper party to seek a change in ownership or to compel the transfer of title. While the statute speaks of an unlawful erection, construction, reconstruction, alteration, conversion, maintenance, use, or division of land, it does not provide for a transfer of title as a remedy.

With respect to that branch of the plaintiffs' cross motion which was for summary judgment on the first cause of action insofar as asserted by the individual plaintiffs, Town Law § 268 (2) permits the individual plaintiffs to enforce the Town Code § 198-21.2 (F) (1) (b) to the extent it gives them exclusive use of the community building portion of the combined building. The defendants contend, however, that even if the individual plaintiffs may use Town Law § 268 (2) to seek enforcement of this portion of Town Code § 198-21.2 (F) (1) (b), it, in fact, may

not be enforced because the Town lacked the authority to regulate who owns or occupies land (*see generally Matter of Dexter v Town Bd. of Town of Gates*, 36 NY2d 102, 105 [1975]). Initially, the Supreme Court incorrectly concluded that the defendants waived this argument due to their knowledge of the zoning ordinance when SBJ submitted the proposed master plan, since the "[p]urchase of property with knowledge of the restriction does not bar the purchaser from testing the validity of the zoning ordinance" (*Vernon Park Realty, Inc. v City of Mount Vernon*, 307 NY 493, 500 [1954]). Nevertheless, the defendants' contention is without merit. The rule of law articulated in *Matter of Dexter* is inapplicable to the facts of this case. A town does not act in excess of its authority when it creates a zoning district for senior citizens (*see Maldini v Ambro*, 36 NY2d 481, 484 [1975]), or when it limits the occupancy of dwelling units within a planned retirement community to persons aged 55 or over (*see Campbell v Barraud*, 58 AD2d 570, 572 [1977]). Since these are valid exercises of a town's zoning power, it must follow that a town may also limit the use of a recreational facility within a senior residential community to those seniors living there. Accordingly, the Supreme Court properly granted so much of that branch of the plaintiffs' cross motion which was for summary judgment on the first cause of action insofar as asserted by the individual plaintiffs as sought exclusive use of the community building portion of the combined building and its associated outdoor recreational facilities, including the swimming pool and tennis courts.

The Supreme Court should have granted those branches of GGC's motion which were for summary judgment dismissing the fifth and sixth causes of action. Town Law § 268 (2) does not permit a cause of action to recover damages allegedly sustained by the individual plaintiffs on account of the zoning violation or to disgorge profits obtained during the period of violation. Any such claims are governed by the contractual relationships between the parties in the purchase agreements and incorporated documents. Thus, the equitable claims asserted in the fifth and sixth causes of action cannot be maintained, and GGC was entitled to summary judgment dismissing those causes of action (*see Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561, 572 [2005]; *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]).

The Supreme Court properly granted those branches of the defendants' separate motions which were for summary judgment dismissing the seventh cause of action and, with respect to the eighth cause of action, for summary judgment, in effect,

declaring that the defendants and their respective successors in title are not subject to future assessments by the HOA for their fair share of annual common expenses incurred by the HOA or its members. The defendants were given an easement over the common areas and common elements, including roadways, walkways, and landscaped areas, for ingress, egress, and the retrieval of golf balls. The plaintiffs contend that the defendants do not have an express easement and, even if they did, it does not constitute an express agreement which relieves them of their obligation to share ratably in common costs. However, only the latter contention is properly before this Court. Generally, absent an express agreement, all persons benefitted by an easement must share ratably in the cost of its maintenance and repair (*see Green Harbour Homeowners' Assn. v G.H. Dev. & Constr.*, 307 AD2d 465, 466-467 [2003]). Here, the C&R Declaration and the Declaration of Condominium expressly allocates all common expenses to the unit owners according to their percentage interests in the common elements. This constitutes an express agreement relieving the defendants of any such obligation (*see id.* at 466-467).

Finally, with respect to the ninth cause of action, the Supreme Court properly granted that branch of GGC's motion which was for summary judgment, in effect, declaring that the covenant to pay social membership fees to GGC runs with the land so as to bind subsequent purchasers, and properly denied that branch of the plaintiff's cross motion which was for summary judgment on this portion of the ninth cause of action. Initially, we conclude that the HOA is not precluded from maintaining this claim as a result of earlier litigation brought by two original purchasers in the District Court on their own behalf (*see Mincone v Greens Golf Club, LLC*, 31 Misc 3d 148[A], 2011 NY Slip Op 56980[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2011]; *see also Ross v Medical Liab. Mut. Ins. Co.*, 75 NY2d 825, 826 [1990]; *Green v Santa Fe Indus.*, 70 NY2d 244, 253-254 [1987]), and that the HOA has standing to seek this declaratory relief on behalf of its members who did not purchase their units directly from the developer (*see generally Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 775 [1991]). However, the defendants established that the covenant to pay social membership fees runs with the land, as the record demonstrates that the "grantor and grantee intended that the covenant should run with the land," "the covenant is one touching or concerning the land with which it runs," and "there is privity of estate between the . . . party claiming the benefit of the covenant and the right to enforce it, and the . . . party who rests under the burden of the cove-

nant" (*Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank*, 278 NY 248, 255 [1938] [internal quotation marks omitted]). In opposition, the plaintiffs failed to raise a triable issue of fact.

The parties' remaining contentions either are without merit or have been rendered academic in light of our determination.

Since this is, in part, a declaratory judgment action, we remit the matter to the Supreme Court, Suffolk County, for the entry of a judgment, inter alia, declaring that the defendants and their respective successors in title are not subject to future assessments by the HOA for their fair share of annual common expenses incurred by the HOA or its members and that the covenant to pay social membership fees to GGC runs with the land so as to bind subsequent purchasers (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962]). Mastro, J.P., Balkin, Chambers and Maltese, JJ., concur.