Westbrook v Westbrook (2018 NY Slip Op 05956)





Westbrook v Westbrook


2018 NY Slip Op 05956


Decided on August 29, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 29, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
LEONARD B. AUSTIN
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2015-06918
 (Index No. 14004/08)

[*1]Kristen Westbrook, respondent,
v Peter Westbrook, appellant.


Quatela Hargraves & Chimeri, PLLC, Hauppauge, NY (Christopher J. Chimeri and James N. Salvage, Jr., of counsel), for appellant.
Sallah Law Firm, P.C., Holtsville, NY (Dean J. Sallah of counsel), for respondent.



DECISION & ORDER
In an action for a divorce and ancillary relief, the defendant appeals from a judgment of divorce of the Supreme Court, Suffolk County (Marlene L. Budd, J.), entered April 14, 2015. The judgment, insofar as appealed from, upon a decision of the same court (Stephen M. Behar, J.) dated December 22, 2014, made after a nonjury trial, awarded the plaintiff maintenance in the sum of $2,000 per month for the period of January 1, 2015, through June 1, 2019, awarded the plaintiff the sum of $100,333.33, representing one third of the estimated value of the defendant's interest in his business, failed to award the defendant a credit against the proceeds of the sale of the marital residence for payments made by him to reduce the principal balance of a first mortgage and the principal balance of a home equity line of credit on the marital residence, and failed to direct that the parties are equally responsible for the entire remaining balance of the mortgage and the home equity line of credit on the marital residence.
ORDERED that the judgment is modified, on the facts and in the exercise of discretion, (1) by adding thereto a provision awarding the defendant a credit against the proceeds of the sale of the marital residence for 50% of the payments made by him beginning on December 1, 2009, through the pendency of the action to reduce the principal balance of the first mortgage and the principal balance of the home equity line of credit on the marital residence, and (2) by adding thereto a provision directing that the parties are equally responsible for the balance of the home equity line of credit on the marital residence until entry of the judgment of divorce; as so modified, the judgment is affirmed insofar as appealed from, with costs to the defendant, and the matter is remitted to the Supreme Court, Suffolk County, for a determination of the amount that the defendant expended beginning on December 1, 2009, through the pendency of the action to reduce the principal balance of the first mortgage and the principal balance of the interest only home equity line of credit on the marital residence, and for the entry of an appropriate amended judgment thereafter.
The parties were married on July 11, 1998. Prior to the marriage, the defendant's mother gave her home to the defendant and his siblings, and the defendant owned a one-third share of the value of the home as a result. In or around 1999, the defendant purchased the remaining two-thirds share of the value of the home from his siblings. Thereafter, the parties resided in the home with their two children, who were born during the marriage, as well as with the plaintiff's child from a prior relationship. In 2001, the defendant started a business called Dunrite Chimney Corp. (hereinafter Dunrite), which performed, among other things, chimney cleaning and masonry repair.
In April 2008, the plaintiff commenced this action for a divorce and ancillary relief. In a pendente lite order dated August 12, 2008, the Supreme Court, inter alia, directed the defendant to pay temporary child support in the sum of $150 per week. The court also directed the defendant to pay a majority of the carrying charges on the marital residence, which included a first mortgage on the two-thirds share of the value of the marital residence that had been purchased from the defendant's siblings, as well as a home equity line of credit (hereinafter HELOC) that was secured by the marital residence. On or about November 24, 2009, the parties executed a stipulation agreeing, inter alia, that the defendant would have exclusive use and occupancy of the marital residence effective December 1, 2009, and that the defendant would pay child support to the plaintiff in the sum of $350 per week commencing on December 1, 2009. Thereafter, the plaintiff moved, inter alia, to increase the defendant's temporary child support obligation. In a pendente lite order dated May 21, 2010, the Supreme Court directed the defendant to pay $700 per week in temporary child support during the pendency of the action.
Following a nonjury trial, the Supreme Court issued a decision after trial, inter alia, awarding the plaintiff the sum of $100,333.33, representing one third of the estimated value of the defendant's interest in Dunrite, and awarding the plaintiff maintenance in the sum of $2,000 per month for the period of January 1, 2015, through June 1, 2019, when the parties' youngest child turns 18 years old. The court declined to award the defendant a credit for the payments made by him during the pendency of the action to reduce the principal balances of the first mortgage and the HELOC. In addition, the court directed that the marital residence be listed for sale, and that the defendant shall make the payments towards the first mortgage and the HELOC if he continued to reside in the marital residence until the residence was sold. Subsequently, the court issued a judgment of divorce, which, inter alia, awarded the plaintiff the sum of $100,333.33, made the award of maintenance, and incorporated by reference the decision after trial. The defendant appeals from the judgment of divorce.
" [T]he amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts'" (Galanopoulos v Galanopoulos, 152 AD3d 745, 746, quoting Repetti v Repetti, 147 AD3d 1094, 1096; see Kaprov v Stalinsky, 145 AD3d 869, 874). "The factors to consider in awarding maintenance include the standard of living of the parties during the marriage, the income and property of the parties, the distribution of marital property, the duration of the marriage, the health of the parties, the present and future earning capacity of both parties, the ability of the party seeking maintenance to become self-supporting, and the reduced or lost lifetime earning capacity of the party seeking maintenance'" (Horn v Horn, 145 AD3d 666, 668, quoting Kret v Kret, 222 AD2d 412, 412). "The overriding purpose of a maintenance award is to give the spouse economic independence, and it should be awarded for a duration that would provide the recipient with enough
time to become self-supporting" (Sansone v Sansone, 144 AD3d 885, 886 [internal quotation marks omitted]). Here, the Supreme Court providently exercised its discretion in setting the amount and duration of the award of maintenance to the plaintiff.
"A trial court is vested with broad discretion in making an equitable distribution of marital property, and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed" (Aloi v Simoni, 82 AD3d 683, 685 [internal quotation marks omitted]). "Equitable distribution is based on the premise that a marriage is, among other things, an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker'" (K. v B., 13 AD3d 12, 17, quoting O'Brien v O'Brien, 66 NY2d 576, 585). "The distribution of marital assets depends not only on the financial contribution of the parties but also on a wide range of nonremunerated services to the joint enterprise, such as homemaking, raising children and providing the emotional and moral support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home'" (K. v B., 13 AD3d at 17, quoting Brennan v Brennan, 103 AD2d 48, 52; see Repetti v Repetti, 147 AD3d at 1098).
Here, the Supreme Court providently exercised its discretion in awarding the plaintiff the sum of $100,333.33, representing one third of the estimated value of the defendant's interest in Dunrite. The court credited, among other things, the plaintiff's testimony that for the first few years after the husband began operating Dunrite, she contributed towards the business by helping with the scheduling of employees, assisting with some of the billing, answering the work phone during the [*2]day, and reviewing invoices at the end of the day. There is no basis to disturb the court's credibility determination, particularly with respect to the plaintiff's testimony regarding the tasks that she performed for Dunrite in the first two years after the business was started, when the defendant operated the business out of the marital residence (see generally Matter of McNair v Fenyn, 149 AD3d 747, 748). Although the plaintiff began to work part-time later in the marriage, she was primarily responsible for taking care of the parties' children and the household. Additionally, the duration of the parties' marriage was only one factor for the court to consider in determining equitable distribution (see Shyue v Tarn, 6 AD3d 521, 521). Thus, the award of one third of the estimated value of the defendant's interest in Dunrite properly accounts for the plaintiff's direct and indirect contributions to the business, while not ignoring her contributions as the primary caregiver of the parties' children, which allowed the defendant to focus on the business (see generally Repetti v Repetti, 147 AD3d at 1098; Kaplan v Kaplan, 51 AD3d 635).
Contrary to the defendant's contention, the Supreme Court did not engage in impermissible double counting by distributing to the plaintiff a share of the value of the defendant's interest in Dunrite and awarding maintenance to the plaintiff based upon income that the defendant earned from Dunrite, namely, the normalized earnings reported by the expert (see Keane v Keane, 8 NY3d 115; Palydowycz v Palydowycz, 138 AD3d 810, 813; Shah v Shah, 100 AD3d 734; Weintraub v Weintraub, 79 AD3d 856; Kerrigan v Kerrigan, 71 AD3d 737; Groesbeck v Groesbeck, 51 AD3d 722). The maintenance was based upon the reasonable compensation that was excluded from the excess earning calculations. Dunrite is a tangible, income-producing asset as opposed to an intangible asset with no value other than the income it produces. The "excess earnings approach" valuation method used by the plaintiff's expert to determine the fair market value of Dunrite does not change its essential nature as a separate tangible asset (see Palydowycz v Palydowycz, 138 AD3d at 813; Sutaria v Sutaria, 123 AD3d 909, 911). Dunrite employed four individuals other than the defendant, owned four vehicles, and held approximately $50,000 in cash, $29,000 in inventory, and $55,000 in property and equipment. Therefore, it was not completely indistinguishable from the income stream upon which the defendant's maintenance obligation was based. Given the duration of the marriage, the aggregate amount of maintenance awarded to the plaintiff, and all the other circumstances, including that the payout of the award to the plaintiff for Dunrite is only $1,000 per month, the maintenance award is fair and appropriate.
The Supreme Court properly declined to grant the defendant a credit against the proceeds of the sale of the marital residence for payments he made to reduce the principal balance of the first mortgage and the principal balance of the HELOC during the period from the commencement of the action through November 30, 2009. Although the defendant was directed to pay a majority of the carrying charges on the marital residence during the pendency of the action, the court also directed the defendant in the pendente lite order dated August 12, 2008, to pay a relatively small sum of temporary child support to the plaintiff. However, after the parties executed the stipulation dated November 24, 2009, which increased the amount of the defendant's temporary child support obligation commencing on December 1, 2009, and the court thereafter further increased the defendant's temporary child support obligation to $700 per week, the defendant was no longer, in effect, receiving a discount on his temporary child support obligation in recognition of the carrying charges that he was paying. As a result, the court improvidently exercised its discretion in failing to award the defendant a credit against the proceeds of the sale of the marital residence for payments he made to reduce the principal balance of the first mortgage and the principal balance of the HELOC beginning on December 1, 2009, through the pendency of the divorce proceeding (see Morales v Carvajal, 153 AD3d 514, 514; Goldman v Goldman, 131 AD3d 1107, 1108; Hymowitz v Hymowitz, 119 AD3d 736, 741; Turco v Turco, 117 AD3d 719, 722; Le v Le, 82 AD3d 845, 846; Judge v Judge, 48 AD3d 424, 426). Since these expenses should have been allocated on a 50-50 basis, the court should have awarded the defendant a credit against the proceeds of the sale of the marital residence for 50% of the amount that he expended from December 1, 2009, through the pendency of the divorce action to reduce the principal balance of the first mortgage and the principal balance of the HELOC.
The Supreme Court providently exercised its discretion in directing in the decision after trial that the defendant was to be solely responsible for the balance of the first mortgage after the court issued its decision, if he continued to reside in the marital residence (see generally Minervini v Minervini, 152 AD3d 666, 668; Lewis v Lewis, 6 AD3d 837, 839-840). The court [*3]providently exercised its discretion in directing that the defendant was to be solely responsible for the remaining balance of the interest only HELOC after the court issued its decision, if he continued to reside in the marital residence (see McCoy v McCoy, 117 AD3d 806, 809-810; Caracciolo v Chodkowski, 90 AD3d 801, 803; Mosso v Mosso, 84 AD3d 757, 760). However, because both the plaintiff and the defendant derived benefit from a portion of the funds from the HELOC during the marriage in that the funds were used to invest in securities, it is appropriate for the plaintiff to share in repayment of the principal balance of the HELOC until entry of the judgment of divorce (see Morales v Carvajal, 153 AD3d 514; Le v Le, 82 AD3d 845).
Accordingly, we modify the judgment by adding thereto a provision awarding the defendant a credit against the proceeds of the sale of the marital residence for 50% of the payments made by him beginning on December 1, 2009, through the pendency of the action to reduce the principal balance of the first mortgage and the principal balance of the HELOC, and by adding thereto a provision directing that the parties are equally responsible for the balance of the HELOC until entry of the judgment of divorce. We remit the matter to the Supreme Court, Suffolk County, for a determination of the amount that the defendant expended beginning on December 1, 2009, through the pendency of the action to reduce the principal balance of the first mortgage and the principal balance of the interest only HELOC, and for the entry of an appropriate amended judgment thereafter.
RIVERA, J.P., AUSTIN, CONNOLLY and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court