OPINION OF THE COURT
 

 Smith, J.
 

 In this matrimonial action, the primary issue is whether the trial court erred by limiting the wife’s proof of the value of her husband’s interest in his law firm partnership to the value of his capital account. We conclude that there was error and we modify the Appellate Division order accordingly.
 

 Plaintiff, Francine L. Burns, and defendant, Edward J. Burns, were married on December 30, 1972, subsequent to defendant’s achieving partnership status, in January 1972, at Nixon, Hargrave, Devans & Doyle, a Rochester law firm. At the time Mrs. Burns was 21 years of age and Mr. Burns was 35. In 1975, the only child of the marriage was born. During the marriage Mrs. Burns was primarily a homemaker. In addition, she graduated from college, and obtained a master’s degree in business administration and a pilot’s license.
 

 In January 1987, plaintiff commenced this divorce action.
 
 *373
 
 Defendant, then a managing partner at the firm, counterclaimed for the same relief. At the commencement of trial, plaintiff sought disclosure relating to defendant’s interest in the firm and a ruling permitting her to introduce evidence of the value of that interest. Plaintiff’s motions were denied in all respects except that defendant was compelled to provide plaintiff with copies of the K-l forms (indicating defendant’s share of partnership income) and defendant’s personal income tax forms. Supreme Court limited plaintiff’s proof of value to the partnership agreement provision regarding defendant’s capital account, citing the Fourth Department’s "numerous pronouncements on the [valuation] of a partner’s interest in this particular law firm.”
 

 Defendant appealed from so much of the final divorce judgment concerning the issues of child support, spousal maintenance, equitable distribution and attorney’s fees. Plaintiff cross-appealed from the judgment, contesting (1) the determination that defendant’s ownership interest in the firm was equal only to the amount of his capital account ($35,000) and (2) the $40,000 counsel fee award.
 

 The Appellate Division modified Supreme Court’s judgment, allowing defendant to claim the parties’ child as a dependent on his tax returns and adjusting defendant’s maintenance payments and life insurance requirements. The Court further held that Supreme Court correctly determined the value of defendant’s interest in the firm and that plaintiff’s counsel fees were proper. We granted plaintiff’s motion and defendant’s cross motion for leave to appeal.
 

 Although Supreme Court limited plaintiff’s proof of defendant’s interest in the firm to the value of his capital account, it did so on constraint of Appellate Division decisions which construed the same partnership agreement in the context of other cases. In
 
 Rosenberg v Rosenberg
 
 (145 AD2d 916, 919,
 
 lv denied
 
 74 NY2d 603), the Appellate Division held that Supreme Court in that case properly limited the plaintiff’s interest in the firm to the partnership agreement provision indicating that a withdrawing partner is entitled to the amount in her capital account as of the date of the parties’ separation
 
 (id.).
 
 The same Court, in a later case,
 
 Dignan v Dignan
 
 (156 AD2d 995,
 
 appeal dismissed
 
 75 NY2d 915), again involving a partner at the same firm, reached the same conclusion
 
 (contrast, Harmon v Harmon,
 
 173 AD2d 98 [Appellate Division sanctioned expert’s use of provisions of partner
 
 *374
 
 ship agreement including death benefit and withdrawal provisions notwithstanding that the defendant had not died or withdrawn from firm]). We conclude that this was error.
 

 The Equitable Distribution Law broadly defines the term marital property, very narrowly defines "separate” property
 
 (see,
 
 Domestic Relations Law § 236 [B] [1] [d];
 
 Majauskas v Majauskas,
 
 61 NY2d 481, 489) and seeks to achieve the fairest result for both parties upon dissolution of the marriage
 
 (see, O’Brien v O’Brien,
 
 66 NY2d 576, 584-585). In the seminal case of
 
 O’Brien v O’Brien (id.),
 
 this Court held that a medical license acquired during the marriage was marital property under Domestic Relations Law § 236 (B) (1) (c) subject to equitable distribution under section 236 (B) (5). In
 
 Price v Price
 
 (69 NY2d 8), we held that where separate property appreciated during the marriage, in part due to the efforts and contributions of the nontitled spouse, the amount of the appreciation was marital property subject to equitable distribution. It follows that where the nontitled spouse has contributed to the appreciation of the titled spouse’s interest in a partnership, even though the spouse was already a partner at the time of the marriage, the appreciation constitutes marital property subject to equitable distribution.
 

 The problem here lies not in the fact that the nontitled spouse is entitled to share in the interest of the titled spouse but in how that interest should be valued
 
 (see,
 
 Batts,
 
 Remedy Refocus: In Search of Equity in "Enhanced Spouse/Other Spouse” Divorces,
 
 63 NYU L Rev 751; Note,
 
 Professional Licenses as Marital Property: Responses to Some of O’Brien’s Unanswered Questions,
 
 73 Cornell L Rev 133).
 

 Other cases give some guidance as to the resolution here. This Court, in
 
 Amodio v Amodio
 
 (70 NY2d 5), addressed a similar situation in the context of valuing stock for the purposes of equitable distribution in a divorce proceeding. We held that "[t]here is no uniform rule for valuing stock in closely held corporations”
 
 (id.,
 
 at 7) and noted that methods must be tailored to each case with due consideration given to " 'enlightened prediction of the future’ ”
 
 (id.,
 
 at 7, quoting
 
 Estate of Snyder v United States,
 
 285 F2d 857, 861). In
 
 Amodio,
 
 this Court listed several factors identified by the Internal Revenue Service that aid in valuing stock, such as the nature and history of the business, book value of the stock, the company’s goodwill and other intangible assets, and the company’s earning capacity
 
 (id.).
 
 We further stated that
 
 *375
 
 even where the transfer of stock in a given corporation was governed by an agreement predating the marital discord, the price fixed by the agreement would be only one factor to be considered and not conclusive of the value of the stock
 
 (id.).
 

 Defendant concedes that he could have more of an interest in the firm’s assets if it were to dissolve. He claims, however, that because the courts cannot predict whether that event will occur or how to properly evaluate that interest presently, plaintiff cannot have a present interest in the firm’s assets. As
 
 Amodio
 
 demonstrates, however, uncertainty concerning future events should not bar attempts to assign value to an asset. To limit defendant’s interest to the capital account, which measured a partner’s interest on withdrawal from the firm, is to ignore defendant’s status as a continuing and productive partner in an ongoing enterprise.
 

 We conclude that the appreciation, during marriage, in the value of defendant’s partnership interest is marital property to be valued for equitable distribution, and that defendant’s capital account (an agreed value on withdrawal) does not necessarily determine the value of his ownership interest in the ongoing law firm.
 

 As previously stated, we have recognized that there is no uniform rule for fixing the value of a going business for equitable distribution purposes
 
 (see, Amodio v Amodio,
 
 70 NY2d 5, 7,
 
 supra).
 
 Indeed, valuation is an exercise properly within the fact-finding power of the trial courts, guided by expert testimony
 
 (see, Litman v Litman,
 
 61 NY2d 918, 920). The parties are entitled to offer expert testimony and other evidence as to that increase in value. In addition, plaintiff is entitled to discovery from the law firm on this issue, subject to the usual safeguards of relevance, materiality and undue burden.
 

 Plaintiff was entitled to have the benefit of disclosure to prove that the value of defendant’s interest in his firm exceeded his capital account. It would counter the theme of the Equitable Distribution Law and New York’s policy of liberal disclosure to narrowly limit plaintiff’s offer of proof in this case. That the proper valuation of defendant’s interest in the firm was not apparent should provide no impediment to plaintiff’s inquiry. As in
 
 Amodio,
 
 the capital account here may be considered as one factor but is not conclusive of the value of the partner’s interest.
 

 By this holding, we do not give plaintiff unfettered access to
 
 *376
 
 the firm’s financial records. Moreover, whether plaintiff will ultimately prevail in her attempt to prove that defendant’s interest exceeds that circumscribed by the documents she was provided at Supreme Court is another question we do not address.
 

 Defendant contends on his cross appeal that the trial court erred by rendering a distribution ($6,102.32) to plaintiff based upon defendant’s nonqualified, nonvested pension from which, according to defendant, he could receive no benefits until he reached age 55. Defendant argues that he maintains only an expectancy interest in his pension. He relies partially upon our decision in
 
 Majauskas v Majauskas
 
 (61 NY2d 481, 491, n 5,
 
 supra)
 
 where we held that vested pension rights are properly considered marital property and explicitly refused to reach the issue of nonvested pension rights
 
 (id.).
 

 Mindful of the purposes underlying the adoption of equitable distribution and the broad legislative definition of "marital property”
 
 (see, Majauskas v Majauskas, supra,
 
 at 489), we conclude that nonvested pensions are subject to equitable distribution. That position builds on our analysis in
 
 Majauskas v Majauskas (supra),
 
 in which we rejected the contingent elements of pensions in general as suitable bases for denying distribution under Domestic Relations Law § 236 (B)
 
 (see, id.,
 
 at 488-489). It is also consistent with the legislative goal of ensuring that the nontitled spouse has the opportunity to share fairly in the economic fruits of the marital partnership.
 

 Like their vested counterparts, nonvested pensions often represent deferred compensation for service performed over a number of years
 
 (cf., Olivo v Olivo,
 
 82 NY2d 202, 207). Where that is the case, their value cannot reasonably be deemed to accrue only at the particular point in time when vesting occurs. Rather, the view that the nonvested pension has been earned gradually over a period of time that encompasses the marriage and should be distributed accordingly more appropriately reflects the economic realities.
 

 To be sure, there are uncertainties associated with the division of pension rights that have not yet vested. However, as is true of the valuation of defendant’s interest in his law firm, these uncertainties do not present an insurmountable barrier to a fair and realistic distribution. The presence of several contingencies before vesting may operate to reduce the fact finder’s estimate of the present value of the asset. Alter
 
 *377
 
 natively, where the asset’s present value cannot be determined at all at the time of the divorce, the court may, in the exercise of its discretion, devise an order that allocates a portion of each future payment to the nontitled spouse
 
 (see, Majauskas v Majauskas, supra,
 
 at 487-488 [citing an example of a Qualified Domestic Relations Order]).
 

 Here, the uncertainties associated with defendant’s non-vested pension were de minimis since he was only two years away from vesting at the time of the trial and there was no evidence that he was planning to leave the law firm before that point. Under these circumstances, the trial court did not err in assessing a present after-tax value for defendant’s nonvested pension and in directing that plaintiff be awarded half of that amount. Further, in view of the size and liquidity of the marital estate, the trial court had the discretion either to order an immediate payout of a party’s share of the future pension benefits or to delay that payout until the vesting of said benefits (Domestic Relations Law § 236 [B] [1] [b]; [5] [e]).
 

 Finally, plaintiff argues that the trial court erred by calculating arrearages of child support and maintenance from the date of the temporary order of support and failed to order such support from the date of the commencement of the action. A final order of maintenance or child support "shall be effective as of the date of the application therefor” (Domestic Relations Law § 236 [B] [6] [a]; [7] [a]). Plaintiff’s summons with notice, by service of which she commenced this action on January 5, 1987, contains her application for an award of maintenance and support. Since defendant concedes that plaintiff is entitled to "retroactivity as of the date of the application” and does not contest that the summons with notice contained her first application, we conclude that in these circumstances plaintiff is entitled to have the final awards of support and maintenance modified to be made retroactive to January 5, 1987. Defendant is entitled to a credit for "any amount of temporary maintenance [and child support] which has been paid” (Domestic Relations Law § 236 [B] [6] [a]; [7] [a]).
 

 We find no reason to disturb the conclusions reached by the Appellate Division on the other issues raised.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to plaintiff, and the case remitted to Supreme Court, Monroe County, for further proceedings in
 
 *378
 
 accordance with the opinion herein and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
 

 Order modified, etc.