■ ALICE K. HARBOUR, Appellant-Respondent, v WILLIAM A. HARBOUR, Respondent-Appellant. [643 NYS2d 969] —Crew III, J. P. Cross appeals from a judgment of the Supreme Court (Hughes, J.), ordering, *inter alia,* equitable distribution of the

parties' marital property, entered August 18, 1995 in Albany County, upon a decision of the court.

The parties were married in 1960 and have three children, all of whom are emancipated. During the course of the marriage, defendant obtained his engineering degree and ultimately became a partner in and chief executive officer of Clough, Harbour & Associates (hereinafter CHA), a professional engineering firm. Although plaintiff, who earned a general Associate's degree, periodically was employed outside the home, she primarily assumed the role of a traditional homemaker—managing the house, caring for the parties' children and entertaining defendant's clients and associates.

Defendant vacated the marital residence in January 1991, voluntarily began making pendente lite payments to plaintiff and assumed responsibility for the carrying charges on the marital residence. Plaintiff subsequently commenced this action in May 1992, and defendant obtained a divorce in Vermont in December 1992.

A trial was held in February 1995 with respect to, *inter alia*, equitable distribution and maintenance, at which time the parties stipulated to the value of all their marital property as of December 31, 1992 except defendant's interest in CHA. After receiving testimony from, among others, the parties and their respective experts, Supreme Court determined that marital assets totaling approximately $3.9 million were subject to distribution. To that end, defendant was awarded his entire partnership interest in CHA, his Vermont residence, certain furniture and a life insurance policy, for a total award of $2,481,314. Plaintiff was awarded the marital residence, certain personal property and furniture, and the bulk of the parties' liquid assets (stocks, certificates of deposit and retirement accounts), for a total award of $1,421,921. Supreme Court denied plaintiff's request for maintenance, health insurance, and counsel and expert fees, and these appeals by the parties ensued.[1]

Plaintiff initially contends that Supreme Court abused its discretion in finding that she wastefully dissipated certain marital funds. The parties stipulated that as of December 31, 1992, their C.L. King account contained $351,805; at the time of trial, the account had a balance of $205,560, a difference of $146,245. The record reveals that plaintiff expended $110,260 to pay her therapist, estimated income taxes and counsel, accountant and expert witness fees, all of which are legitimate

---

1. This Court granted defendant's motion for a partial stay of Supreme Court's judgment pending appeal.

expenses (*see generally, Brandt v Brandt*, 176 AD2d 1016, 1017), and, as such, plaintiff should not have been penalized to this extent. We reach a contrary conclusion, however, with respect to the remaining $35,985 for which plaintiff offered no explanation other than the purchase of a new wardrobe. Although clothing generally is regarded as a legitimate, everyday expense (*see, supra*), even considering the substantial loss of weight plaintiff claims to have suffered following the parties' separation, the amount expended strikes us as excessive, particularly in view of the disputed testimony regarding plaintiff's clothing expenditures during the course of the marriage and the fact that the receipts for these purchases do not appear to have been placed into evidence at trial. Accordingly, the C.L. King account should be valued at $315,820, with plaintiff being penalized only to the extent of $35,985.

Turning to defendant's cross appeal, defendant's principal argument is that Supreme Court erred in valuing his partnership interest in CHA. In so doing, Supreme Court included and assigned values to four separate components: (1) the amount of the capital account, (2) the amount of the capital note, (3) the amount of the salary continuation plan, and (4) the amount of the "guaranteed payments on account of capital". Defendant does not dispute that the first two components—the capital account and the capital note—should be included in valuing his partnership interest, and we have no quarrel with Supreme Court's decision to credit the testimony of defendant's expert as to their combined value, totaling $630,000 after taxes.

As for the salary continuation plan, the partnership agreement dictates that a partner or principal leaving the firm due to death, disability or retirement is entitled to 40% of his or her average guaranteed payment or salary, provided he or she has reached age 55 and has been a partner or principal for at least 10 years. While it is true that defendant was not 55 years old as of the December 31, 1992 valuation date, two important points must be observed. First, defendant's expert testified that the salary continuation plan essentially was an unfunded pension plan which, in turn, plainly qualifies as marital property subject to valuation and distribution (*see, Burns v Burns*, 84 NY2d 369, 376-377). Additionally, inasmuch as defendant had reached age 55 by the time of trial, Supreme Court would have been remiss had it elected to simply ignore the fact that defendant indeed was eligible to participate in the plan at that point in time. In short, economic reality requires that the salary continuation plan be included as a component of defendant's interest in CHA. As to value, defendant's expert testified that

the after-tax present value of this plan was $73,485 and, again, we see no reason to disturb Supreme Court's decision to credit this testimony.

We do, however, agree that Supreme Court's valuation of defendant's partnership interest should not have included the "guaranteed payments on account of capital". The partnership agreement, defendant's tax returns and the testimony of the respective experts all indicate that defendant's total annual compensation has two components—a guaranteed payment on account of services and a guaranteed payment on account of capital. Such payments are made on a monthly basis in accordance with the terms of the partnership agreement, with the amount apparently determined on an annual basis by the firm's executive committee. Defendant's expert testified that defendant always received a guaranteed payment on account of services and, with the exception of one year, received a guaranteed payment on account of capital.

In determining the value of these payments for purposes of equitable distribution, plaintiff's expert averaged the guaranteed payments on account of capital received by defendant during the relevant time period and projected those payments over a 16-year period,[2] resulting in a pre-tax present value of $1.7 million as of December 31, 1992. Defendant's expert assigned no value to these payments, contending instead that such payments were not relevant in determining the overall value of defendant's partnership interest. Defendant's expert is correct.

First, as defendant correctly notes, the guaranteed payments defendant receives each month based upon his capital contribution, which plaintiff characterizes as a return on investment and defendant likens to interest payments, in no way enhances defendant's interest in the capital itself. In other words, although defendant receives additional compensation each month based upon his capital contribution, the payments themselves do not increase defendant's capital interest in the firm. Additionally the record, including the testimony given by plaintiff's expert, plainly reveals that defendant is entitled to receive guaranteed payments on account of capital only as long as he remains a member of the firm and, as such, there is no basis for projecting these payments over a period of years until the date of defendant's anticipated retirement. Moreover, inasmuch as these payments unquestionably contribute to defendant's overall compensation on a monthly basis, common

2. Defendant was 54 years old at the time of trial, and plaintiff's expert estimated that defendant would not retire until age 70.

sense dictates that defendant should be "charged" with such payments only once. Thus, permitting the guaranteed payments on account of capital to be included as a component of both defendant's annual compensation and his partnership interest is illogical and improper. Accordingly, defendant's partnership interest in CHA is deemed to be $703,485, representing the after-tax value of defendant's capital account, capital note and salary continuation plan.

Having determined that Supreme Court overvalued defendant's partnership interest in CHA by $1.7 million, it becomes rather apparent that the parties' assets must be redistributed, and we remit this matter to Supreme Court for that purpose on the existing record. In light of our decision in this regard, we decline to reach the remaining arguments advanced by the parties on appeal.

White, Casey and Peters, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.