Gorman v Gorman (2018 NY Slip Op 07104)





Gorman v Gorman


2018 NY Slip Op 07104


Decided on October 24, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 24, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
MARK C. DILLON
JEFFREY A. COHEN
LINDA CHRISTOPHER, JJ.


2017-02156
 (Index No. 7849/11)

[*1]John Gorman, respondent-appellant,
v
Karen Gorman, appellant-respondent.


Larkin, Ingrassia & Tepermayster, LLP, Newburgh, NY (William J. Larkin and Theresa Cayton of counsel), for appellant-respondent.
H. Scott Ziemelis, Middletown, NY, for respondent-appellant.



DECISION & ORDER
In an action for a divorce and ancillary relief, the defendant appeals from stated portions of a judgment of the Supreme Court, Orange County (Maria Vazquez-Doles, J.), dated December 14, 2016, and the plaintiff cross-appeals from stated portions of the same judgment. The judgment, insofar as appealed from, upon a decision of the same court dated April 5, 2016, made after a nonjury trial, inter alia, awarded the defendant maintenance in the sum of only $4,500 per month for eight years, commencing January 1, 2012, equitably distributed marital property, and imputed income to the defendant to calculate pendente lite support arrears. The judgment, insofar as cross-appealed from, inter alia, failed to award the plaintiff an equitable share of certain bank accounts and awarded the defendant pendente lite support arrears, maintenance, and $20,000 in attorney's fees.
ORDERED that the judgment is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the provision thereof requiring the plaintiff to pay the defendant maintenance in the sum of $4,500 per month for eight years, commencing January 1, 2012, and substituting therefor a provision requiring the plaintiff to pay the defendant maintenance in the sum of $2,750 per month until the earliest of the defendant's remarriage, her attainment of the age at which she becomes eligible for full Social Security benefits, or the death of either party, (2) by deleting the provision thereof terminating the plaintiff's maintenance obligation as of the earliest to occur of January 30, 2010, the plaintiff's remarriage, or the death of either party, and substituting therefor a provision terminating the plaintiff's maintenance obligation upon the earliest to occur of the defendant's remarriage, the defendant's attainment of the age at which she becomes eligible for full Social Security benefits, or the death of either party, (3) by deleting the provision thereof requiring the plaintiff to pay to the defendant the sum of $22,980.71 for child support arrears, payable in the sum of $200 per month, (4) by deleting the provision thereof requiring the plaintiff to pay the defendant temporary maintenance arrears in the sum of $104,706.08, (5) by adding a provision thereto requiring the plaintiff to maintain a life insurance policy in the sum of $500,000, naming the defendant as irrevocable beneficiary for as long as the plaintiff is obligated to pay maintenance to the defendant, (6) by adding a provision thereto directing the plaintiff to provide health insurance for the defendant, effective February 7, 2012, until she becomes eligible for coverage through employment or through Medicare, whichever shall first occur, (7) by adding a provision thereto providing that the proceeds of the parties' joint checking account, with a [*2]commencement date value of $95,981.18, and the parties' joint savings account, with a commencement date value of $44,458.50, be equally divided between the parties, and (8) by adding a provision thereto providing the defendant with a $1,600 credit toward her distributive award; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Orange County, for the calculation of the amounts, if any, due to the defendant from the plaintiff for child support and temporary maintenance arrears in accordance herewith, and for a determination as to what, if any, amounts are due to the defendant from the plaintiff based on our direction that the plaintiff must provide health insurance for the defendant, effective February 7, 2012.
The parties were married on May 16, 1987. During the marriage, the defendant, after having worked as a legal secretary for a period of time, quit the workforce to become a homemaker and to care for the parties' two children, who now are in their mid-to-late twenties, while the plaintiff worked in various capacities connected with the United States military, including defense contracting work that took him overseas to Iraq.
This action for a divorce and ancillary relief was commenced on August 2, 2011, after the plaintiff vacated the marital residence. Thereafter, the defendant moved for and was awarded pendente lite maintenance and child support, and she has had exclusive occupancy of the marital residence during the pendency of this action. While the Supreme Court awarded the defendant unallocated temporary maintenance and child support in the sum of $6,300 per month in May 2013, the plaintiff unilaterally decided to pay the defendant, as of February 2014, the sum of only $2,500 per month. A nonjury trial was held on the ancillary economic issues attendant to the divorce. By judgment of divorce dated December 14, 2016, which incorporated by reference the court's decision after trial dated April 5, 2016, the court, inter alia, determined issues of maintenance, equitable distribution, pendente lite support arrears, and the defendant's application for attorney's fees. The defendant appeals and the plaintiff cross-appeals from stated portions of the judgment.
The defendant contends that her maintenance award of $4,500 per month for eight years, commencing January 1, 2012, is inadequate both in duration and amount, arguing, inter alia, that the Supreme Court improperly found, in setting the award, that she was capable of earning $26,000 per year and directed that maintenance shall terminate upon the plaintiff's remarriage. The plaintiff contends that the award is excessive, arguing, inter alia, that the court improperly imputed income to him.
"The amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its unique facts" (Culen v Culen, 157 AD3d 926, 928; see Carroll v Carroll, 125 AD3d 710, 711). In cases, like this one, commenced prior to amendments to the Domestic Relations Law effective January 23, 2016 (see L 2015, ch 269, § 4), factors to be considered include "the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking maintenance to be self-supporting, the reduced or lost earning capacity of the party seeking maintenance, and the presence of children of the marriage in the respective homes of the parties" (Gordon v Gordon, 113 AD3d 654, 655; see Domestic Relations Law former § 236[B][6][a]).
Here, considering the relevant factors, including the ages of the parties, the long duration of the marriage and the extended absence of the defendant from the workforce, the distribution of the marital assets, the parties' respective past and future earning capacities, and the availability of retirement funds and pensions, the Supreme Court providently exercised its discretion in awarding the defendant durational, as opposed to lifetime, maintenance (see Hartog v Hartog, 85 NY2d 36, 50-51; Levitt v Levitt, 97 AD3d 543, 544; Siskind v Siskind, 89 AD3d 832, 833; Litvak v Litvak, 63 AD3d 691, 691-692). However, rather than providing for a durational limitation of eight years and subjecting that award to termination upon the plaintiff's remarriage, under the circumstances of this case, the maintenance award should continue until the earliest of the defendant's remarriage, her attainment of the age at which she becomes eligible for full Social Security benefits, or the death of either party (see Repetti v Repetti, 147 AD3d 1094; Carroll v [*3]Carroll, 125 AD3d 710; Giokas v Giokas, 73 AD3d 688).
We disagree with the determination of the Supreme Court to impute to the plaintiff an annual income of $151,192. It is undisputed that from 2008 through late 2013, the plaintiff was employed overseas in Iraq and, as a result of such employment, received a significantly augmented salary, enhanced overtime, and no-cost room and board. In December 2013, the plaintiff returned to the United States, taking up residence in Ohio, where he resides with his fiancée. As of the time of trial, the plaintiff was employed by the Department of Defense as a quality assurance inspector at a salary of $81,079 per year. The plaintiff did not submit a current statement of net worth. He acknowledged that his earnings are deposited into a joint checking account with his fiancée and that all of his monthly expenses are shared with his fiancée. The plaintiff also acknowledged that he regularly gambles, to the point that he has received free hotel accommodations, airfare, vacations (including a cruise), and other free or discounted items because of his frequent gambling. In 2013, he reported gambling winnings of $11,250 on his tax return. He acknowledged winning $1,800 over two days of gambling in September 2014.
Taking into account the plaintiff's lack of candor in his testimony as to his finances, his history of gambling winnings and related benefits, and his failure to submit a current net worth statement and disclose his living expenses (which he shares with his fiancée), it is appropriate to impute to the plaintiff additional income above his basic governmental salary (see Fenech v Fenech, 141 AD3d 683, 685-686). However, we disagree with the Supreme Court's determination as to the amount of income to be imputed to the plaintiff. The full amount of the enhanced income attributable to the plaintiff's employment in Iraq should not be imputed to him given that the plaintiff has returned from Iraq and no longer receives such heightened compensation. It would be unreasonable to expect that the plaintiff would remain in Iraq indefinitely. Under the circumstances presented, we find it appropriate to impute to the plaintiff an annual income of $100,000, which attributes to the plaintiff enhanced income from his gambling activities and reflects an adjustment for the savings that the plaintiff should obtain from sharing living expenses with his fiancée.
While we agree with the defendant that the Supreme Court should not have imputed income to her based on statistical information from the New York State Department of Labor that was not admitted in evidence at trial (see McAuliffe v McAuliffe, 70 AD3d 1129, 1132-1133), there was evidence, nonetheless, that the defendant had earned $15 per hour as a legal secretary during the early part of the marriage. Even though she has been out of the work force for an extended period of time and does not have a college degree, she is in good health and has a sufficient employment history to warrant the conclusion that she is capable of earning at least the sum of $26,000 annually, which is the amount of income imputed to her by the court.
Taking into account the parties' respective imputed incomes and all the factors to be considered in awarding maintenance, we determine that the amount of maintenance payable by the plaintiff to the defendant to be $2,750 per month, which sum shall be neither tax deductible by the plaintiff nor taxable to the defendant.
The plaintiff contends that the Supreme Court erred in its determination of arrears under the temporary order for child support and maintenance and failed to properly credit him for payments he made for support. With regard to child support arrears, the court determined that no support was due for the period prior to January 2012, and that child support was due for the one then-minor child for the period from January 2012 through August 2014, when the child attained the age of 21. The court determined that the plaintiff was responsible for a total of $64,406.56 in child support during this period, subject to credits for documented payments. We disagree with this approach.
It is axiomatic that child support awards are effective as of the date of the application therefor and that the court has no discretion to reduce or cancel arrears which accrue prior to application for a downward modification of the child support obligation (see Matter of Gardner v Maddine, 112 AD3d 926, 927; Sinanis v Sinanis, 67 AD3d 773, 774). Likewise, the court may not impose a child support obligation with respect to a child who has attained the age of 21 (see Ciampa [*4]v Ciampa, 47 AD3d 745, 748). Therefore, the Supreme Court should not have determined, nearly two years after the parties' youngest child had attained the age of 21, what the child support would have been for that child based on the trial testimony. On the other hand, the record shows that a temporary order of support was issued at a preliminary conference held on May 31, 2012, which required the plaintiff to pay to the defendant the sum of $6,300 per month in unallocated maintenance and child support. At the time the order of support was made, one of the parties' two children was under 21. Thus, for purposes of determining the retroactivity of support, we determine that one-half (i.e., $3,150) of the temporary support order is attributable to child support and that the plaintiff is responsible for that amount for the period from May 31, 2012, to August 24, 2014, when the subject child turned 21.
The plaintiff admits that, as of February 2014, he paid the sum of only $2,500 per month toward the unallocated support award of $6,300 per month. The plaintiff explained that he did not make full payment, at least in part, because he perceived that he would not be able to recoup any determined overpayments at the end of the case. The support payments made by the plaintiff under the order dated May 31, 2012, to the extent made prior to August 24, 2014, should be allocated one-half to maintenance and one-half to child support and, thus, the plaintiff shall be entitled to a credit for one-half of any monthly support payments he made during the period between May 31, 2012, and August 24, 2014, against his obligations for child support during that period as herein determined. We remit the matter to the Supreme Court, Orange County, for purposes of calculating the amount due for child support arrears during the period between May 31, 2012, and August 24, 2014. Any amounts due to the defendant shall bear interest from the date of each default, due to the plaintiff's willful conduct in refusing to comply with his court-ordered obligations, notwithstanding that he was earning enhanced compensation and enjoying free room and board and other benefits during the entire period involved (see Domestic Relations Law § 244; Perri v Perri, 265 AD2d 539, 540; Lewis v Weiner, 191 AD2d 172). The amount due to the defendant for arrears shall be entered as a judgment and, if the judgment is not satisfied as of the closing of the sale of the marital residence, shall be payable to the defendant out of the plaintiff's share of the proceeds.
The issue of arrears in temporary maintenance is subsumed within the determination as to the effective date of the permanent maintenance award. An award of maintenance is effective as of the date of the application therefor, which, in this instance, is February 7, 2012, the date of the defendant's answer which contained a demand for maintenance (see Burns v Burns, 84 NY2d 369, 377; Diaz v Gonzalez, 115 AD3d 904, 906; Augustin v Bullen, 112 AD3d 658, 659). The plaintiff is entitled to a credit against the amounts due retroactively for temporary maintenance in the amount of one-half of the monthly support payments he made commencing May 31, 2012, and continuing to August 24, 2014, and for the full amount of the monthly support payments, if any, he made after August 24, 2014. We remit the matter to the Supreme Court, Orange County, for purposes of calculating the amount due as and for retroactive maintenance. Any amounts due to the defendant shall bear interest, due to the plaintiff's willful conduct in refusing to comply with his court-ordered temporary support obligations. The amount due to the defendant for retroactive maintenance arrears shall be entered as a judgment and, if the judgment is not satisfied as of the closing of the sale of the marital residence, shall be payable to the defendant out of the plaintiff's share of the proceeds.
We agree with the defendant that the Supreme Court should have directed the plaintiff to purchase, pursuant to Domestic Relations Law § 236(B)(8)(a), a life insurance policy in the amount of $500,000, designating the defendant as sole irrevocable beneficiary for only as long as the plaintiff is obligated to pay maintenance to the defendant (see Maloney v Maloney, 137 AD2d 666, 668). The court also should have directed the plaintiff to provide health insurance for the plaintiff until she becomes eligible for coverage through employment or through Medicare (see Domestic Relations Law § 236[B][8][a]; Costello v Costello, 304 AD2d 517). Since this direction should be effective as of the date of the defendant's verified answer, February 7, 2012, we remit the matter to the Supreme Court, Orange County, for a determination as to what, if any, amounts are owed by the plaintiff to the defendant on account of this direction.
Contrary to the defendant's contention, the Supreme Court providently exercised its discretion in directing the sale of the marital residence because the parties' children have reached [*5]majority, there is no need of a spouse as a custodial parent to occupy the residence for the children (see Litwack v Litwack, 237 AD2d 580, 581), and neither party submitted a market-based valuation of the marital residence.
We agree with the defendant's contention that the Supreme Court erred in failing to provide for the distribution of two joint bank accounts: a joint savings account with a commencement date balance of $44,458.50, and a joint checking account with a commencement date balance of $95,981.18. Therefore, we direct that the proceeds of these accounts be equally divided between the parties.
Property acquired during the marriage is presumed to be marital property, and the party seeking to overcome such presumption has the burden of proving that the property in dispute is separate property (see Massimi v Massimi, 35 AD3d 400, 402). Here, the plaintiff purchased a diamond engagement ring for $3,200 for his fiancée prior to commencement of this action, and failed to prove that it was separate property. Accordingly, the Supreme Court should have given the defendant a 50% credit of the ring's purchase price, i.e., $1,600, toward her distributive award.
In view of, inter alia, the relative financial circumstances of the parties and the relative merits of the parties' positions at trial, the Supreme Court providently exercised its discretion in awarding the defendant $20,000 in attorney's fees (see Margolis v Cohen, 153 AD3d 1390, 1394; Nadasi v Nadel-Nadasi, 153 AD3d 1346, 1351).
The parties' remaining contentions are either not properly before us or without merit.
SCHEINKMAN, P.J., DILLON, COHEN and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court