Nerayoff v Rokhsar (2019 NY Slip Op 00607)





Nerayoff v Rokhsar


2019 NY Slip Op 00607


Decided on January 30, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 30, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
RUTH C. BALKIN
FRANCESCA E. CONNOLLY
LINDA CHRISTOPHER, JJ.


2016-06939
2016-07240
 (Index No. 203157/12)

[*1]Steven Nerayoff, appellant-respondent, 
v
Lillian Rokhsar, etc., respondent-appellant.


Schlissel Ostrow Karabatos, PLLC, Garden City, NY (Joseph A. DeMarco, Jeanine M. Rooney, and Stephen W. Schlissel of counsel), for appellant-respondent.
Gassman Baiamonte Gruner, P.C., Garden City, NY (Rosalia Baiamonte of counsel), for respondent-appellant.



DECISION & ORDER
In a matrimonial action, the plaintiff appeals from (1) a decision of the Supreme Court, Nassau County (Leonard D. Steinman, J.), dated December 24, 2015, and (2) a judgment of the same court entered May 24, 2016, and the defendant cross-appeals from the judgment. The judgment, insofar as appealed from, upon the decision, made after a nonjury trial, determined that certain assets were marital property and equitably distributed those assets, denied the plaintiff's application for a credit based upon the defendant's use of marital funds to purchase a new car after commencement of the action, imputed income to the plaintiff in the sum of $210,000 per year and imputed income to the defendant in the sum of only $70,000 per year for purposes of calculating maintenance and child support, directed the plaintiff to pay child support and 75% of the children's unreimbursed medical expenses, extra-curricular activities, schooling, and camp, and awarded the defendant attorneys' fees in the sum of $50,000. The judgment, insofar as cross-appealed from, inter alia, equitably distributed the marital property, awarded the plaintiff 85% of the capital loss carryovers generated by the plaintiff's securities trading activities during the marriage and awarded only 15% of those carryovers to the defendant, directed the plaintiff to pay maintenance and child support retroactive to April 1, 2014, in the sum of only $50,000, and awarded the defendant attorney's fees in the sum of only $50,000.
ORDERED that the appeal from the decision is dismissed, without costs or disbursements, as no appeal lies from a decision (see Schicchi v J.A. Green Constr. Corp., 100 AD2d 509); and it is further,
ORDERED that the judgment is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the provision thereof equally dividing certain bank accounts representing the proceeds of the sale of Freedom Home Care, LLC, and the assets of Maple Ventures, LLC, and substituting therefor a provision determining that the plaintiff is entitled to 60% of those assets and the defendant is entitled to 40% of those assets, (2) by deleting the provision thereof determining that 40% of the value of a patent portfolio was marital property, and substituting therefor a provision determining that 100% of the value of the plaintiff's interest in the patent portfolio, as of the date the action was commenced, was marital property, (3) by deleting the provision thereof, in effect, awarding the plaintiff 100% of the value of his interest in the patent [*2]portfolio, and substituting therefor a provision awarding the defendant a credit of $10,519.50, equivalent to one-half of the value of the plaintiff's interest in the patent portfolio as of the date of commencement, (4) by deleting the provision thereof awarding the plaintiff 85% of the capital loss carryovers generated by the plaintiff's securities trading activities during the marriage and awarding the remaining 15% to the defendant, and substituting therefor a provision equally dividing the capital loss carryovers, (5) by deleting the provision thereof, in effect, denying the plaintiff's application for a credit based upon the defendant's use of marital funds to purchase a new car after commencement of the action, and substituting therefor a provision awarding the plaintiff a credit in the amount of $17,500, (6) by deleting the provision thereof directing the plaintiff to pay maintenance and child support retroactive to April 1, 2014, and substituting therefor a provision directing the plaintiff to pay maintenance and child support retroactive to July 19, 2013, and (7) by deleting the provision thereof awarding the defendant $50,000 in attorneys' fees, and substituting therefor a provision awarding the defendant $180,000 in attorneys' fees; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
The plaintiff and the defendant were married on November 21, 2004, and subsequently had two children. On November 27, 2012, the plaintiff commenced this action for a divorce and ancillary relief. On July 19, 2013, the defendant served the plaintiff's attorneys with a notice of appearance demanding, inter alia, maintenance and child support.
At a nonjury trial on the issues of child support, maintenance, and equitable distribution, the evidence established that, in 2003, one year prior to the marriage, the plaintiff formed and was the sole member of Freedom Home Care, LLC (hereinafter Freedom), a provider of home healthcare. In 2004, the parties were married. In the summer of 2005, the plaintiff received a notice from the Internal Revenue Service (hereinafter IRS) indicating that he was being audited, and faced potential tax liabilities in excess of $6 million due to his participation in a certain security transaction in the late 1990's. In 2005, the plaintiff transferred his entire membership interest in Freedom to the defendant. The plaintiff testified that the purpose of this transfer was to preserve assets for the family while litigation pertaining to his potential tax liabilities was ongoing. The defendant testified that the plaintiff told her that Freedom was being transferred into her name because he had a gambling problem and placing the company in her name would protect it from his impulsive gambling behavior.
In 2008, Freedom, which was still in the defendant's name, was sold for approximately $11 million. The proceeds from the Freedom sale were placed into a bank account in the defendant's name. The money was used to fund the family's living expenses and to fund various investments and business ventures, including, inter alia, Maple Ventures, LLC (hereinafter Maple), a venture capital firm of which the defendant was the sole member. In 2012, the plaintiff prevailed in his tax dispute with the IRS, lifting the cloud of the potential $6 million tax liability. Thereafter, the parties entered into an agreement transferring the membership interest in Maple from the defendant to the plaintiff. As relevant to the issues on appeal, one of Maple's assets included a note payable by an entity named OS33, Inc. (hereinafter OS33), to Maple in 48 monthly installments of $3,000.59, commencing on January 15, 2012. Additionally, Maple loaned $50,000 to the defendant's uncle (hereinafter the Rokhsar loan), and the plaintiff testified that when the loan was repaid, he deposited the proceeds into Maple's bank account.
In April 2012, the plaintiff and a business partner applied for a provisional patent for technology used in motor-vehicle parking, and subsequently applied for related patents (hereinafter collectively the patent portfolio). After the commencement of the action, the plaintiff assigned his interest in the patent portfolio to CloudParc, an entity that was formed after the commencement of the action. The plaintiff presented expert testimony stating that, as of November 27, 2012, the date of commencement of this action, the plaintiff's interest in the patent portfolio was valued at $21,039. The defendant presented no evidence of the patent portfolio's value.
In a decision after trial, the Supreme Court, inter alia, found that the plaintiff had unclean hands in connection with his transfer of Freedom to the defendant for the purpose of shielding it from the IRS and, thus, was prohibited from arguing that all or a portion of the proceeds from the sale of Freedom were separate property. Accordingly, the court directed that the parties' [*3]holdings flowing from the sale of Freedom, in particular, Maple, and the funds in a Citigold bank account, be equally divided. The court held that the defendant was entitled to one-half of all post-commencement payments due from OS33 to Maple under the installment loan and, in effect, denied the defendant's application for a credit relating to the money repaid from the Rokhsar loan. The court held that "40% of the value of the patent portfolio . . . is marital property," but awarded the plaintiff 100% of his interest in the patent portfolio without awarding the defendant a credit for the marital portion of that asset. The court denied the defendant's application for an award of an interest in Cloudparc, which was formed post-commencement. The parties possessed capital loss carryovers in excess of $16 million that were generated by the plaintiff's securities trading activities during the marriage. The court awarded the plaintiff 85% of the capital loss carryovers and awarded the remaining 15% to the defendant, based upon its reasoning that "[t]here is a greater likelihood that [the plaintiff's] future capital gains will be greater than [the defendant's]." The court directed the parties to equally divide all interest, dividend loss carryovers, and net operating losses. The court denied the plaintiff's request for a credit representing one-half of the amount the defendant spent post-commencement on a new car in excess of the amount agreed upon by the parties in a so-ordered stipulation. For purposes of calculating maintenance and child support, the court imputed $210,000 in annual income to the plaintiff and $70,000 in annual income to the defendant. The court directed that maintenance and child support payments were retroactive to April 1, 2014, the date the defendant moved for a pendente lite award of maintenance and child support. The court denied the defendant's application for $180,000 in attorneys' fees, and awarded the defendant the sum of only $50,000 in attorneys' fees.
"The trial court is vested with broad discretion in making an equitable distribution of marital property, and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed" (Saleh v Saleh, 40 AD3d 617, 617-618 [internal quotation marks and citation omitted]; see Aloi v Simoni, 82 AD3d 683, 685). "Moreover, where, as here, the determination as to equitable distribution has been made after a nonjury trial, the evaluation of the credibility of the witness and the proffered items of evidence is committed to the sound discretion of the trial court, and its assessment of the credibility of witnesses and evidence is afforded great weight on appeal" (Schwartz v Schwartz, 67 AD3d 989, 990 [citation omitted]; see Franco v Franco, 97 AD3d 785, 786).
We agree with the Supreme Court's determination that the entire proceeds of the sale of Freedom should be treated as a marital asset subject to equitable distribution. However, the court improvidently exercised its discretion in equally dividing certain bank accounts representing the proceeds of the sale of Freedom, and the assets of Maple. Under the circumstances of this case, we find that 60% of those assets should be distributed to the plaintiff, and 40% of those assets should be distributed to the defendant (see Meccariello v Meccariello, 46 AD3d 640, 641).
We agree with the Supreme Court's denial of the defendant's requests for a credit representing one-half of the payments made by OS33 to Maple prior to commencement of the action, and for a credit relating to the money received pursuant to the Rokhsar loan. The defendant failed to meet her burden of establishing that the plaintiff secreted or wastefully dissipated the payments received prior to commencement of the action (see Spencer-Forrest v Forrest, 159 AD3d 762, 764-765; Leva v Leva, 155 AD3d 707, 709).
There is a statutory presumption that all property acquired by either spouse during the marriage, unless clearly separate, is marital property (see Domestic Relations Law § 236[B][1][c]). "The party seeking to overcome the presumption has the burden of proving that the property in dispute is separate property" (Spencer-Forrest v Forrest, 159 AD3d at 764; see Rosenberg v Rosenberg, 145 AD3d 1052, 1055). Here, the plaintiff failed to overcome the presumption that his interest in the patent portolio, as of the date of commencement, was entirely marital property (see Hymowitz v Hymowitz, 119 AD3d 736, 739-740; see also Gafycz v Gafycz, 148 AD3d 679, 680). Thus, the Supreme Court should have determined that 100% of the plaintiff's interest in the patent portfolio, as of the date of commencement, was marital property. Further, we find that the defendant was entitled to a credit of $10,519.50, equivalent to one-half of the value of the plaintiff's interest in the patent portfolio as of the date of commencement (see Cohen v Cohen, 132 AD3d 627, 629; Hymowitz v Hymowitz, 119 AD3d at 742; Dellafiora v Dellafiora, 38 AD3d 825, 826-827). [*4]However, we agree with the court's denial of the defendant's request for an award of a portion of the plaintiff's interest in Cloudparc, which was formed after the commencement of the action (see Lueker v Lueker, 72 AD3d 655, 656).
The Supreme Court providently exercised its discretion in awarding each party one-half of the interest, dividend loss carryovers, and net operating losses accumulated during the marriage (see Hymowitz v Hymowitz, 119 AD3d at 742; Dellafiora v Dellafiora, 38 AD3d at 826-827; Kim v Schiller, 112 AD3d 671, 676). However, we disagree with the court's determination to award the plaintiff 85% of the capital loss carryovers generated by the plaintiff's securities trading activities during the marriage and to award the remaining 15% to the defendant. Those losses should be equally divided (see Kim v Schiller, 112 AD3d at 676). In light of our holding that the court properly determined that the proceeds of Freedom were a marital asset, we reject the plaintiff's contention that the interest, dividend loss carryovers, net operating losses, and capital loss carryovers were, either in whole or in part, his separate property.
Further, the Supreme Court should have awarded the plaintiff a credit for the defendant's purchase of a new car during the pendency of the action. "[E]xpenses incurred after the commencement of a matrimonial action are the responsibility of the party who incurred them" (Prince v Prince, 247 AD2d 457, 457). Here, after the action was commenced, the parties stipulated that the defendant would deliver the parties' 2008 Range Rover to the plaintiff and purchase a replacement vehicle "comparable to the current fair market value of the Range Rover." The defendant undisputedly used marital funds to purchase a new car for $60,000. The court accepted the plaintiff's testimony that the 2008 Range Rover had a value of $25,000 and rejected the defendant's testimony that its value was $35,000. Accordingly, the court should have awarded the plaintiff a credit in the sum of $17,500, representing one-half of the amount of marital funds the defendant expended in excess of the amount permitted by the stipulation.
"A court need not rely upon a party's own account of his finances, but may impute income based upon the party's past income or demonstrated future potential earnings" (Steinberg v Steinberg, 59 AD3d 702, 705). "The court may impute income to a party based on his or her employment history, future earning capacity, educational background, or money received from friends and relatives" (Wesche v Wesche, 77 AD3d 921, 923). Here, the Supreme Court providently exercised its discretion in imputing $210,000 in annual income to the plaintiff and $70,000 in annual income to the defendant for purposes of calculating maintenance and child support, based upon their skills, educational backgrounds, and employment histories (see Lashlee v Lashlee, 161 AD3d 843, 844). Further, contrary to the plaintiff's contention, the court providently exercised its discretion in directing him to pay his pro rata share of 75% of the children's add-on expenses (see Weidman v Weidman, 162 AD3d 720, 722).
The Supreme Court should have made its award of maintenance and child support retroactive to July 19, 2013, the date on which the defendant first served the plaintiff with a demand for child support and maintenance (see Domestic Relations Law § 236[B][7][a]; Burns v Burns, 84 NY2d 369, 377; Gillis v Gillis, 113 AD3d 816, 817-818).
The Supreme Court's award of $50,000 in attorneys' fees to the defendant was inadequate. Under the circumstances of this case, the defendant should have been awarded an attorneys' fee in the sum of $180,000 (see Meara v Meara, 104 AD3d 916, 917; Quinn v Quinn, 73 AD3d 887, 887).
SCHEINKMAN, P.J., BALKIN, CONNOLLY and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court